# NEW MOTOR VEHICLE BOARD OF CALIFORNIA v. ORRIN W. FOX CO. ET AL.

No. A–451. Decided December 6, 1977

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicant, the New Motor Vehicle Board of the State of California, has requested me to stay a judgment of the United States District Court for the Central District of California entered on October 19, 1977. That judgment enjoined enforcement of the California Automobile Franchise Act (Cal. Veh. Code Ann. §§ 3060–3069 (West Supp. 1977)), insofar as that Act's provisions relate to the establishment and relocation of franchised motor vehicle dealerships.

The pertinent provisions of the Act provide that before an automobile manufacturer or its proposed or existing dealer may establish a new dealership or relocate an existing one notice of such intention must be given to the Board and to all existing dealers for the "same line make" (direct competitors) within the "relevant market area." § 3062. Upon receiving such a notice any dealer may file within 15 days a protest against the proposed establishment or relocation, and

the Board is thereupon required to order the postponement of the establishment or relocation of the dealership pending hearing and final decision on the merits of the protest. Failure to comply with the order is a misdemeanor under California law, and can result in the suspension or revocation of the license of a manufacturer or dealer.

Upon receipt of a protest, the Board is also required to issue an order fixing a time for the hearing, which is to commence within 60 days following the order.[1] Without further elaborating the statutory proceedings relating to the hearing and ultimate decision of the Board, I am satisfied that the District Court correctly concluded that in the normal course of events manufacturers and dealers wishing to establish or relocate a franchise would be prevented from doing so for a period of several months during which the hearing is conducted and the Board renders its decision.

Respondents, General Motors Corp. and two Southern California retail automobile dealers, brought an action seeking to enjoin the enforcement of these provisions of the Act. The three-judge District Court granted the relief requested by these respondents, and expressed the view that "the right to grant or undertake a Chevrolet dealership and the right to move one's business facilities from one location to another" fell within the ambit of liberty interests protected by the Fourteenth Amendment. The court further concluded, citing *Fuentes* v. *Shevin,* 407 U. S. 67, 84–86 (1972); *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337 (1969); and *Mullane* v. *Central Hanover Trust Co.,* 339 U. S. 306, 313 (1950), that

---

[1] It is unclear under the statute whether the same communication should contain both the order enjoining the proposed establishment or relocation of the dealership and the order setting the date of the hearing. In the case of one of the respondents in the instant action, the Board set the hearing date six weeks after issuing the injunction. The District Court, however, interpreted the statute to require the injunction and the order setting the hearing date to be promulgated concurrently.

under the Due Process Clause this "liberty" could be curtailed only after a hearing. Here, the court reasoned, since respondents were deprived of their "liberty" to move or establish a dealership for many months pending the Board's decision, enforcement of the statute occasioned a "gross violation of the Due Process Clause of the Fourteenth Amendment." [2]

Upon consideration of the application and the response, I have decided that the stay should be granted conditioned as hereinafter indicated. Because the case presumably will be coming to us by appeal and will therefore be within our obligatory jurisdiction, I feel reasonably certain that four Members of the Court will vote to note probable jurisdiction and hear the case on the merits, and I am also of the opinion that a majority of the Court will likely reverse the judgment of the District Court. Cf. *Graves* v. *Barnes,* 405 U. S. 1201, 1203–1204 (1972) (POWELL, J., in chambers). It should not be necessary to add that neither of these matters can be predicted with anything like mathematical certainty, and the respondents for whom judgment is stayed are free to move the full Court to vacate a stay if they feel the Circuit Justice has miscalculated on these points.

I believe the District Court was wrong when it decided

---

[2] The court also thought this statute permitted action distinguishable from that authorized in *Fahey* v. *Mallonee,* 332 U. S. 245 (1947) (statute permitting Government to summarily seize banks in serious financial difficulty), or *Ewing* v. *Mytinger & Casselberry,* 339 U. S. 594 (1950) (procedure for summary seizure of misbranded drugs by Government). Here there was no provision authorizing a public official to exercise discretion as to whether the public interest required immediate action, but rather the injunction automatically followed a protest by a competitor.

The court also thought the acts authorized under the statute differed from the act of a party obtaining a restraining order pending hearing. A party seeking a restraining order must make a persuasive showing of irreparable harm and likelihood of prevailing on the merits. No such showing was required of the competitor before his protest turned into an injunction under the statute.

that an automobile manufacturer has a "liberty" interest protected by the Due Process Clause of the Fourteenth Amendment to locate a dealership wherever it pleases, and was also wrong when it concluded that such a protected liberty interest could be infringed only after the sort of hearing which is required prior to ceasing a constitutionally protected property interest. Our cases in this difficult area do not offer crystal-clear guidance, and I venture my own analysis of the problem fully realizing that it is not apt to be the last word authoritatively spoken on the subject.

*Meyer* v. *Nebraska,* 262 U. S. 390, 399 (1923), did indeed state that the right to liberty guaranteed by the Due Process Clause included the right "to engage in any of the common occupations of life," and went on to say that such liberty could not be interfered with "under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competence of the State to effect." *Id.,* at 399–400. *Meyer,* I think, was what many would call a "substantive due process" case, where the legislature had flatly prohibited or limited a particular type of action without regard to individualized differences among potential actors. For example, five years after *Meyer* the Court held that the Due Process Clause prohibited States from limiting fees charged by employment agencies. *Ribnik* v. *McBride,* 277 U. S. 350 (1928). This decision was not based on any procedural defect in the statute, because the New Jersey statutory scheme made no provision for individualized determinations as to what fees might be charged; the statute by its terms set the limits, and no fact that could have been proved at a hearing would have been grounds under the statutory scheme for avoiding the limits imposed by the statute. The sort of substantive due process analysis embodied in cases such as *Ribnik, supra,* has long since faded from the scene, and that case itself was expressly overruled in *Olsen* v. *Nebraska,* 313 U. S. 236 (1941). While it may well

be that there remains a core area of liberty to engage in a gainful occupation that may not be "arbitrarily" denied by the State, I do not think that the claim to establish an automobile dealership whenever and wherever one chooses is within that core area. Prior to the enactment of the Act here in question, respondents were not restrained by state law of this kind from so doing, but the absence of state regulation in the field does not by itself give them a protected "liberty" interest which they may assert in a constitutional attack on newly enacted limitations on their previously unrestricted ability to locate a dealership.

The cases upon which the District Court specifically relied in concluding that the California Act was unconstitutional were, as noted above, *Fuentes, supra, Sniadach, supra,* and *Mullane, supra.* But all of these cases involved "property" interests found to be protected under the Due Process Clause against deprivation without prior hearing. There is no question that these cases state the law with respect to property interests such as were involved in them. But I cannot accept, and do not believe that a majority of this Court would accept, the proposition that respondents' "liberty" interest in establishing a car dealership was also a "property" interest which is protected against deprivation without prior hearing in the same manner as were the property interests involved in *Fuentes, supra, Sniadach, supra,* and *Mullane, supra.* The State of California was not seizing any existing tangible property interest of respondents by this Act; it was simply requiring them to delay establishment of a dealership on property which they presumably owned or leased or were in the process of buying or leasing until the Board considered and decided the protests against the proposed establishment. The suggestion that one has a right to conduct whatever sort of business he chooses from property he owns or leases was rejected at least as long ago as *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 (1926); see *City of Eastlake* v. *Forest City Enterprises,*

*Inc.,* 426 U. S. 668 (1976); *Village of Belle Terre* v. *Boraas,* 416 U. S. 1 (1974).[3]

If California had by statute conferred upon automobile manufacturers and dealers the right to establish and relocate franchises wherever they chose, and then imposed a procedural hurdle such as the one here in question before the right could be effectuated, the case would be close to decisions such as *Arnett* v. *Kennedy,* 416 U. S. 134 (1974), and *Bishop* v. *Wood,* 426 U. S. 341, 348–349 (1976). But the respondents had no such statutorily conferred entitlement or property right before the passage of this Act; they were free to locate their franchises where they chose, subject to state and local restrictions of differing kinds, simply because the State had not chosen to limit that freedom by legislation. When the State later decided to impose the limits here in question, and establish the hearing procedures which it did, I think it deprived respondents of neither "liberty" nor "property" within the meaning of the Fourteenth Amendment to the United States Constitution.[4]

---

[3] Respondents also attack the statute on the grounds that it conflicted with the federal antitrust laws. The District Court did not pass upon this contention.

[4] The stated concerns which prompted enactment of the Act were "to avoid undue control of the independent . . . dealer by the vehicle manufacturer or distributor and to insure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally." 1973 Cal. Stats., ch. 996, § 1. This concern has prompted at least 18 other States to enact statutes which prescribe conditions under which new or additional dealerships may be permitted in the territory of the existing dealership. See Ariz. Rev. Stat. Ann. § 28–1304.02 (1976); Colo. Rev. Stat. § 12–6–118 (1974); Fla. Stat. § 320–642 (1975); Ga. Code § 84–6610 (f)(8), (10) (1975); Haw. Rev. Stat. § 437–28 (b)(22)(B) (Supp. 1975); Iowa Code § 322A.4 (Supp. 1977–1978); Mass. Gen. Laws Ann., ch. 93B, § 4 (3)(l) (West 1972 and Supp. 1977–1978); Neb. Rev. Stat. § 60–1422 (1974); N. H. Rev. Stat. Ann. § 357–B:4 (III)(l) (Supp. 1975); N. M. Stat. Ann. § 64–37–5 (P) (Supp. 1975); N. C. Gen. Stat. § 20–305 (5) (1975); R. I. Gen. Laws § 31–5.1–4

Respondents argue that the State is not injured by the injunction because the proposed relocations are almost invariably approved, and therefore even if the District Court was wrong on the merits a stay should not be granted. This argument casts too narrowly the purpose of the statute and the injury to the State, however. The interest of the State does not necessarily find expression through disapproval of relocation plans, but rather through the act of examining the proposed relocations to make sure that existing dealers are not being impermissibly harmed by the manufacturer and that the move is otherwise in the public interest. This interest is infringed by the very fact that the State is prevented from engaging in investigation and examination. And the occasion for this review may arise often during the time this injunction is in effect. In an affidavit presented to the District Court, Sam W. Jennings, Executive Secretary of the New Motor Vehicle Board, indicated that in the first 44 days following the issuance of the District Court's injunction, the Board received 99 notices of intent to relocate or establish new dealerships in California. Under the terms of the injunction, all those applicants will be allowed to locate dealerships without undergoing any scrutiny by the State. And assuming the State eventually prevails on the merits and the injunction is lifted, it is not at all clear that the New Motor Vehicle Board will have the authority to examine the propriety of all those relocations or to force those relocated dealerships to stop doing business. It also seems to me that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.

---

(C)(11) (Supp. 1976); S. D. Comp. Laws Ann. §§ 32–6A–3, 32–6A–4 (1976); Tenn. Code Ann. § 59–1714 (j) (1968); Vt. Stat. Ann., Tit. 9, § 4074 (c)(9) (Supp. 1977); Va. Code § 46.1–547 (d) (Supp. 1977); W. Va. Code § 347–17–5 (i) (Supp. 1977); Wis. Stat. § 218.01 (3)(f) (1957). Congress has also taken remedial action. See Automobile Dealer's Day in Court Act, 70 Stat. 1125, 15 U. S. C. §§ 1222–1225.

Respondents further argue that they are delayed in completing the necessary business arrangements for establishing or relocating, and this often results in losing the opportunity to locate in a particularly desirable spot. This irreparable injury outweighs any short-term interest the State has in enforcing the statute, they argue. While respondents' contentions are not completely without force, I am ultimately unpersuaded. Respondents may undergo some hardships because of the delay between the protest and the hearing, but the statute appears to minimize the delay, and the applicant appears to agree to abide by such a construction, at least for purposes of this stay. In its proposed stay order presented to the District Court applicant suggested a provision along the following lines:

> "FURTHER ORDERED that pending determination of said appeal, all orders required by California Vehicle Code section 3066, subdivision (a), fixing the times and places of hearings upon protests against relocation or establishment of dealerships shall be issued and served by defendant New Motor Vehicle Board concurrently with the notification required to be made by the Board to the franchisor under California Vehicle Code section 3062 . . . ."

They have indicated a willingness to have this same provision incorporated into a stay issued by me. Under these conditions, I think the hardship worked on respondents by the statutory scheme does not outweigh the damage done to the State by the injunction and therefore I grant the proposed stay on the terms described above. As I have said before, statutes are presumptively constitutional and, absent compelling equities on the other side, which I do not find in this case, should remain in effect pending a final decision on the merits by this Court. Cf. *Marshall* v. *Barlow's, Inc.*, 429 U. S. 1347, 1348 (1977) (REHNQUIST, J., in chambers).

It is therefore ordered that, pending applicant's timely filing and this Court's disposition of a jurisdictional statement, the injunction entered by the District Court for the Central District of California in this case on October 19, 1977, be and the same hereby is stayed. The stay order shall incorporate the above-quoted paragraph proposed by applicant to the District Court.