BOLIN, Justice
(concurring specially).
“What has been an orderly process, I suspect, will soon resemble a three-ring circus.” Tyson v. Macon Cnty. Greyhound Park, Inc., 43 So.3d 587, 595 (Ala. 2010) (Woodall, J., dissenting). Admittedly this quotation is taken out of context. From the perspective of a probate judge in Alabama, however, the events that have unfolded subsequent to the issuance of the memorandum opinion and order by United States District Judge Callie S. Granade, in the United States District Court for the Southern District of Alabama, Southern Division, in Civil Action No. 14-0208-CG-N surely brings to mind this quotation. I do not intend to trivialize the important constitutional questions presented by this controversy, but the unfortunate path this litigation has taken so far has resulted in mass confusion that I suspect has led the public to wonder what has happened to the orderly rule of law.
As a former probate judge, I am aware of the many duties imposed by law upon the office of probate judge, only one of which is judicial. Some of the other “hats” worn by some or all probate judges include being the keeper of records and documents that must be maintained for posterity, serving as the chief election official of the county in all elections, and, although this particularly may vary from county to county, issuing a variety of licenses, e.g., hunting licenses, fishing licenses, driver’s license renewals, automobile-tag renewals, and marriage licenses.
Although I concur fully with the dismissal of the action herein, as will be addressed further below I am disappointed and concerned that, amongst everyone heretofore connected with the constitutional issues and the litigation, nowhere has there been a probate judge with a seat as a party at any of these proceedings, except for Mobile County Probate Judge Don Davis, who was dismissed from the proceedings on July 25, 2014, and added again as a party on February 10, 2015. The only two judicial participants who exercised wisdom, restraint, and discretion on the record were United States Supreme Court Justices Thomas and Scalia. I specifically refer to *580 Justice Thomas’s dissent to the United States Supreme Court’s denial of a stay in the federal court matter, which Justice Scalia joined and which states as follows:
“The Attorney General of Alabama asked us to stay a federal injunction preventing him from enforcing several provisions of Alabama law defining marriage as a legal union of one man and one woman pending our consideration of Obergefell v. Hodges, No. 14-556; Tanco v. Haslam, No. 14-562; DeBoer v. Snyder, No. 14-571; and Bourke v. Beshear, No. 14-574. Those cases are scheduled to be argued this Term and present the same constitutional question at issue here: Whether the Fourteenth Amendment requires States to recognize unions between two people of the same sex as a marriage under state law.
“When courts declare state laws unconstitutional and enjoin state officials from enforcing them, our ordinary practice is to suspend those injunctions from taking effect pending appellate review. See, e.g., Herbert v. Kitchen, [Ms. 13A687, January 6, 2014] 571 U.S. _, 134 S.O. 893, 187 L.Ed.2d 699 (2014); see also San Diegans for Mt. Soledad Nat. War Memorial v. Paulson, 548 U.S. 1301, 126 S.Ct. 2856, 165 L.Ed.2d 941 (2006) (Kennedy, J., in chambers) (staying an injunction requiring a city to remove its religious memorial). Although a stay is not a matter of right, this practice reflects the particularly strong showing that States are often able to make in favor of such a stay. Because States are required to comply with the Constitution, and indeed take care to do so when they enact their laws, it is a rare case in which a State will be unable to make at least some showing of a likelihood of success on the merits. States also easily meet the requirement of irreparable injury, for ‘ “[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.” ’ Maryland v. King, [Ms. 12A48, July 30, 2012] 567 U.S. _, _, 133 S.Ct. 1, 183 L.Ed.2d 667 (2012) (slip op., at 2-3) (Roberts, C.J., in chambers) (quoting New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers)). The equities and public interest likewise generally weigh in favor of enforcing duly enacted state laws.
“It was thus no surprise when we granted a stay in similar circumstances a little over a year ago. See Herbert v. Kitchen, supra. Nor was it a surprise when we granted a stay in similar circumstances less than six months ago. McQuigg v. Bostic, [Ms. 14A196, Aug. 20, 2014] 573 U.S. _, 135 S.Ct. 32, 189 L.Ed.2d 884 (2014). Those decisions reflected the appropriate respect we owe to States as sovereigns and to the people of those States who approved those laws.
“This application should have been treated no differently. That the Court more recently denied several stay applications in this context is of no moment. Those denials followed this Court’s decision in October not to review seven petitions seeking further review of lower court judgments invalidating state marriage laws. Although I disagreed with the decisions to deny those applications, Armstrong v. Brenner, ante, p. _; Wilson v. Condon, ante, p. _; Moser v. Marie, ante, p. _, I acknowledge that there was at least an argument that the October decision justified an inference that the Court would be less likely to grant a writ of certiorari to consider subsequent petitions. That argument is no longer credible. The Court has now granted a writ of certiorari to review *581 these important issues and will do so by the end of the Term. The Attorney General of Alabama is thus in an even better position than the applicant to whom we granted a stay in Herbert v. Kitchen.
“Yet rather than treat like applicants alike, the Court looks the other way as yet another Federal District Judge casts aside state laws without making any effort to preserve the status quo pending the Court’s resolution of a constitutional question it left open in United States v. Windsor, [Ms. 12-307, June 26, 2013] 570 U.S. _, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013) (slip op., at 25-26). This acquiescence may well be seen as a signal of the Court’s intended resolution of that question. This is not the proper way to discharge our Article III responsibilities. And, it is indecorous for this Court to pretend that it is.
“Today’s decision represents yet another example of this Court’s increasingly cavalier attitude toward the States. Over the past few months, the Court has repeatedly denied stays of lower court judgments enjoining the enforcement of state laws on questionable constitutional grounds. See, e.g., Maricopa County v. Lopez-Valenzuela, [Ms. 14A493, Nov. 13, 2014] 574 U.S. _, _, 135 S.Ct. 428, 190 L.Ed.2d 385 (2014) (slip op., at 2) (Thomas, J., joined by Scalia, J., respecting denial of application for stay) (collecting cases). It has similarly declined to grant certiorari to review such judgments without any regard for the people who approved those laws in popular referendums or the elected representatives who voted for them. In this case, the Court refuses even to grant a temporary stay when it ■will resolve the issue at hand in several months.
“I respectfully dissent from the denial of this application. I would have shorn the people of Alabama the respect they deserve and preserved the status quo while the Court resolves this important constitutional question.”
Strange v. Searcy, [Ms. 14A840, February 9, 2015] 574 U.S. _, _, 135 S.Ct. 940, 191 L.Ed.2d 149 (2015)(emphasis added).
The highly emotional issue involved in the federal proceeding, on both sides of the argument, it appears will be decided only by the United States Supreme Court. The plaintiffs in the two cases decided by the federal district court could have joined the various probate judges in the State as parties, if nothing else, as relief parties. For that matter, the federal district court could have provided that the probate judges were made defendants. See Rules 19 and 20, Fed.R.Civ.P. (allowing for join-der and permissive joinder, respectively). This would have allowed the probate judges notice and an opportunity to be heard. Rather, the only probate judge made an original party to the federal court action was Judge Davis, the petitioner in the instant proceeding, who was later dismissed from that action with prejudice and who has now been added as a party again. The federal district judge in her order acknowledged both that the United States Supreme Court has granted certiorari in a case to be decided in this Term of Court and that that case will “definitively” decide the important constitutional issues involved. However, the same federal district court denied a stay past February 9, 2015, although the definitive decision lies just four months ahead. It is my judgment that the United States Court of Appeals for the Eleventh Circuit, with due respect, also contributed to the resulting confusion by refusing to take further action in this and similar same-sex-marriage cases in that circuit until the United States Supreme Court issues a decision and by denying a stay of the federal court *582 matter before Judge Granade. While all of the above was occurring, the Chief Justice of the Alabama Supreme Court sent a letter to the probate judges giving them advice on how to address this issue, together with a memorandum of law, and finally issued an order to the probate judges on the eve of the expiration of the federal court’s temporary stay that reflected a view of the law that directly conflicted with the federal judge’s view of the law as espoused in her order.
The ensuing legal “circus” has left the probate judges, who had no voice or opportunity to be heard in this matter, in an untenable position—caught between a federal district judge’s order, the statewide precedential value of which is uncertain, and an order from the Chief Justice of the Alabama Supreme Court. If the term “circus” is hyperbole, the current predicament at least qualifies as a “darned if I do, darned if I don’t” dilemma for the probate judges, and this is no way to wisely, fairly, and deliberately administer justice.
The Chief Justice has wide powers pursuant to § 12-2-30(b)(7) and (8), Ala.Code 1975, but the question arises as to whether those powers apply to probate judges’ administrative, as opposed to judicial, actions. Should a probate judge follow the order of the chief judicial officer in the State of Alabama? Or should the probate judge follow an order of a federal district judge, of which he or she has possibly been made aware by media or by word of mouth through his or her professional association, not by having had a seat at the table in the courtroom as a party ? There are many federal district judges in the three federal districts in Alabama. From a precedential standpoint, what happens if the opinions of two federal district judges conflict: Which opinion, if either, would be the binding precedent on a federal question? Who wins if there is a conflict between a federal court order and a state-court opinion on a federal question? Although I do not agree with the entirety of the article, these questions were recently examined in the introduction to that article in the Vanderbilt Law Review, which does state correctly the following pivotal questions:
“Lower federal court precedent cannot bind state courts, or so we are told. Most state courts assert that they are free to reach their own conclusions about the meaning of federal law, even when doing so creates a conflict with the federal court of appeals presiding over the geographic region in which they sit. Several federal circuits have conceded that their decisions are not binding on state courts, and, in concurring opinions, two justices have emphatically agreed. A number of federal courts scholars have declared that state courts need not follow lower federal court precedent because state courts are ‘coordinate’ with lower federal courts and not ‘subordinate’ to them.
“And yet, upon closer inspection, the role of lower federal court precedent in state court decisionmaking remains unclear. A few state courts appear to believe that they are bound to follow the decisions of the federal courts of appeals on questions of federal law, and many others have issued inconsistent opinions on that question. The U.S. Courts of Appeals for the Eighth and Ninth Circuits claim that state courts must follow their lead on federal questions, creating a circuit split that has never been resolved by the Supreme Court. Only a handful of legal scholars have opined on the matter, and most have done so in passing in articles devoted to other subjects. Remarkably, then, this significant question about the interplay between the state and federal judicial systems lingers unresolved more than two-hun *583 dred years after the Constitution’s ratification.
“The relationship between the lower federal courts and the state courts raises foundational questions about the place of those federal courts in our constitutional structure. Are the lower federal courts’ interpretations of federal law binding on the states under the Supremacy Clause, as the Supreme Court considers its own precedent to be? Alternatively, are state and loioer federal courts coequals under the Constitution such that neither can control the other’s rulings? Does Congress or the Supreme Court have the constitutional authority to require that state courts follow loioer federal court precedent? If not, is it because principles of federalism forbid such interference with state institutions, or because such a rule undermines judicial independence, or bothl
“Similar foundational questions were raised seventy-five years ago in Erie Railroad v. Tompkins, [304 U.S. 64, 71, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),] when the Supreme Court overruled Swift v. Tyson, [41 U.S. (16 Pet.) 1, 18, 10 L.Ed. 865 (1842),] and held that federal courts must follow state law as articulated by a state’s highest court. The Court explained that federal courts undermined state sovereignty by failing to treat state courts’ views on state law as controlling. Although Erie focused on the federal courts’ obligation to adopt state common law, the decision confirmed that federal courts must follow state courts’ interpretations of state positive law as well. The bottom line after Erie is that state courts have the final word on the meaning of state law.
“Erie is one of a handful of iconic cases that has shaped our understanding of not only the relationship between state and federal courts but also our entire federal system. According to John Hart Ely, Erie ‘implicates, indeed perhaps it is, the very essence of our federalism.’ And yet Erie left the job half done. The case tells us how federal courts should treat state courts’ precedent on state law, but it does not address how state courts should respond to federal courts’ interpretation of federal law. Of course, some might argue that Erie supports the conclusion that state courts are bound only by the Supreme Court on questions of federal law, just as federal courts are required to follow only the precedent of the highest court of the state on questions of state law. And yet the unique and limited role of the Supreme Court creates a significant disjunction: the Court cannot quickly resolve disputes between state and federal courts on the meaning of federal law, leaving intrastate splits to linger between these court systems for decades.”
Amanda Frost, Inferiority Complex: Should State Courts Follow Lower Federal Court Precedent on the Meaning of Federal Law?, 68 Vand. L.Rev. 53, 55-59 (2015)(footnotes omitted; emphasis added).
The purpose of this writing is not to try today to answer the questions posed by the article quoted above. It is offered solely to illustrate the probable angst and consternation that each of the 68 probate judges of this State has undergone since the federal court’s order and Chief Justice Moore’s order were issued, and it did not have to be this way.
As stated above, I place the blame for the confusion that now exists in the various probate courts of this State since the two-week stay expired at the feet of everyone involved, save the Attorney General, who has properly requested a stay at all levels, and Justices Thomas and Scalia, who offered a solution that would have delayed this matter for only four months *584 or less—after which we would have had the final answer, no confusion, and, most importantly, an orderly administration of justice.
In conclusion, I feel compelled to comment on a portion of the amended pleading in the “In Rem Action” that is actually before this Court and that the Court properly dismisses. There is a portion contained in the “action” with which I sharply disagree. I quote from paragraph 7 of the “action”:
“7. If this Court either fails to docket this amended in rem action regarding the Administrative Order or fails to address this amended in rem action filed within this Court before the federal court in the Southern District of Alabama enters an Order requiring Judge Davis to abide by the above federal court orders, then Judge Davis will accept this Honorable Court’s failure to act on this amended in rem matter as an implicit directive to Judge Davis to abide by the Orders of the Southern District of Alabama on January 23rd and also January 28th, 2015. Judge Davis anticipates that Judge Granade could enter this Order as quickly as tomorrow based on the Order the judge has entered today.”
(Emphasis added.)
With due regard for the fact that the above document was submitted to this Court by a probate judge who is suffering the uncertainties set forth in this writing, I would caution any litigant coming before this Court that, although, proverbially, silence may be golden, the silence of this Court, as an institution, should never be treated as an “implicit directive” to take any particular course of action.