

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00193-CV

---

**WHITE DEER INDEPENDENT SCHOOL DISTRICT, ET AL., APPELLANTS**

V.

**KELLY MARTIN, APPELLEE**

---

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 11807, Honorable Stuart Messer, Presiding

---

November 5, 2019

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Property owner Kelly Martin filed a lawsuit challenging White Deer Independent School District's decision to reduce its local option homestead exemption.[1] The State of Texas intervened in the lawsuit. The trial court granted the motions for summary judgment filed by Martin and the State as to their claims against the District, but denied their motions as to the claims against certain individual defendants. The competing

---

[1] *See* TEX. TAX CODE ANN. § 11.13(n) (West Supp. 2018).

motion for summary judgment filed by the District was granted with respect to the claims against the individual defendants and denied with respect to the claims against the District. We affirm in part and reverse and remand in part.

**I. Background**

A. Homestead Exemption Changes under S.B. 1 and S.J.R. 1

For many years, the State of Texas has provided residence homestead owners a property tax exemption of $15,000, exempting that amount of a homestead's appraised value from school district taxation. School districts and other local taxing units have had the option to grant an additional exemption of a percentage of the appraised value of a residence homestead. TEX. TAX CODE ANN. § 11.13(n). The percentage may not exceed twenty percent and the amount of the exemption may not be less than $5,000. *Id.* The District was among the minority of school districts that granted its residents this local option homestead exemption ("LOHE"). Under the Tax Code, LOHEs must be adopted before July 1 of the tax year in which the exemption applies. *Id.*

In May 2015, the Legislature passed S.B. 1, which increased the statewide homestead exemption from $15,000 to $25,000 and created section 11.13(n-1) of the Texas Tax Code, which provides, in relevant part, "[A] school district . . . that adopted [a LOHE] under Subsection (n) for the 2014 tax year may not reduce the amount of or repeal the exemption. This subsection expires December 31, 2019." Act of May 29, 2015, 84th Leg., R.S., ch. 465, § 1, 2015 Tex. Gen. Laws 1779, 1779 (current version at TEX. TAX CODE ANN. § 11.13(b), (n-1)). Thus, under the new subsection n-1, existing LOHEs had to be preserved for five years. S.B. 1 included provisions to protect school districts

2

against the resulting loss in revenue associated with the increase in the homestead exemption.

In addition, S.B. 1 was the enabling legislation for a proposed constitutional amendment. S.J.R. 1, a joint resolution passed the same day as S.B. 1, proposed amending the Texas Constitution to (1) increase the statewide homestead exemption to $25,000, and (2) allow the Legislature to prohibit the governing body of a political subdivision that has adopted a LOHE from reducing the amount of or repealing the exemption before the end of the 2019 tax year. Tex. S.J. Res. 3, 84th Leg., R.S., § 1, secs. 1-b(c), 1-b(e), 2015 Gen. Laws 5412, 5412-14. If the proposed amendments were approved by voters, the changes to the Tax Code would take effect "on the date on which the constitutional amendment proposed by SJR-1 . . . takes effect" and would apply to the 2015 tax year. Act of May 29, 2015, 84th Leg., R.S., ch. 465, §§ 26-27, 2015 Tex. Gen. Laws 1779, 1786. If voters did not approve the constitutional amendment, then S.B. 1 would have "no effect." *Id.* § 27.

B. White Deer ISD's Action

The District's board of trustees met on June 30, 2015—after the Governor had signed S.B. 1 but before the vote on the constitutional amendments. At the meeting, the trustees voted five to zero to reduce the District's LOHE from twenty percent (the level adopted for the 2014 tax year) to ten percent.

C. Passage of Constitutional Amendment and Subsequent Action by the District

On November 3, 2015, Texas voters approved the constitutional amendments proposed by S.J.R. 1 that allowed the changes set out in S.B. 1 to become law. At its

3

regular meeting in February of 2016, the District's board of trustees voted to continue the LOHE at ten percent for the 2016 tax year. On June 15, 2016, the Attorney General of Texas and the Texas Education Commissioner sent a joint letter to the District, asserting that the District's reduction of its LOHE violated S.B. 1's provisions. The letter advised the school board to restore its exemption to 2014 levels to bring the District into compliance with section 11.13(n-1) of the Tax Code. In February of 2017, however, the board of trustees again voted to maintain the LOHE at the reduced ten percent level it had adopted in 2015 and 2016.

## II. The Litigation

A. The Lawsuit

On September 15, 2016, White Deer resident Kelly Martin sued the District, seven members of the District's board of trustees, and the superintendent of the District, alleging that they had violated S.B. 1's provisions by reducing the LOHE.[2,3] Martin alleged that the District imposed ad valorem taxes on her homestead and that she was entitled to the 2014-level LOHE in tax years 2015 through 2019. She sought a declaratory judgment that, among other things, (1) section 11.13(n-1) of the Texas Tax Code is constitutional, (2) school districts were prohibited from repealing or reducing the LOHE any time from January 1, 2015, through December 31, 2019, (3) any repeal or reduction of a LOHE in that time period was void as a matter of law, (4) the District's reduction of the LOHE was ultra vires, and (5) the District's assessment and collection of taxes subject to the LOHE

---

[2] The individual defendants were sued in their official capacities only.

[3] Martin also sued the tax assessor-collector of Carson County. She later non-suited those claims.

was ultra vires. She also sought injunctive relief ordering the District to reinstate the LOHE and to stop assessing and collecting property taxes subject to the exemption. Finally, Martin sought a refund of the taxes collected by the District that were subject to the LOHE.

## B. The State's Intervention

The same day Martin filed her lawsuit, the State of Texas filed a plea in intervention, asserting its interests in protecting Texas citizens and effecting the property tax relief measures provided by S.B. 1. The State sought a declaratory judgment that the acts of the District defendants violated S.B. 1 and S.J.R. 1 and a writ of mandamus ordering them to comply with such law.

The District defendants answered and filed (1) special exceptions, (2) a motion to strike the plea in intervention, (3) a motion to dismiss the official-capacity claims against the individual defendants, (4) a plea in abatement, and (5) a plea to the jurisdiction.

## C. Summary Judgment

On March 30, 2017, Martin and the State filed a joint motion for summary judgment, asserting that S.B. 1 prohibits school districts from reducing or repealing the LOHE after January 1, 2015. The District defendants filed a competing motion for summary judgment, and Martin and the State filed amended motions for summary judgment, on September 15, 2017. The District defendants alleged in their motion that the claims against them were barred by doctrines of immunity and that Martin and the State had failed to exhaust administrative remedies. They also argued that S.B. 1's prohibition was not in effect at the time the District reduced its LOHE.

5

All parties filed responses to the motions for summary judgment on October 16, 2017. The trial court entered a final judgment on April 10, 2018, in which it granted the District defendants' motion for summary judgment and denied Martin's and the State's motions for summary judgment with respect to the claims brought against the individual defendants. However, the court granted Martin's and the State's motions for summary judgment and denied the District defendants' motion for summary judgment with respect to the claims against the District. The trial court's final judgment declared that (1) section 11.13(n-1) of the Texas Tax Code is constitutional as a matter of law; (2) section 11.13(n-1) prohibits school districts from repealing or reducing the amount of a LOHE at any time between January 1, 2015, through December 31, 2019, that was adopted for the 2014 tax year; and (3) the acts of the District complained of by Martin and the State violate S.B. 1 and S.J.R. 1 and, therefore, the repeal and any reduction of the LOHE by the District violates section 11.13(n-1), has no effect, and is void as a matter of law. In addition, the trial court ordered the District to stop assessing and collecting property taxes subject to the 2014 LOHE and to disgorge and refund any such taxes it had collected from Martin.

The District defendants and Martin cross-appealed to this Court.

## III. Motion to Dismiss

After briefing was complete in this appeal, the District filed a motion to dismiss in which it asserts that this Court lacks subject matter jurisdiction over all issues before it. The District argues that the ultra vires claims are moot because they seek prospective injunctive relief requiring the District to comply with section 11.13(n) and (n-1) of the Texas Tax Code, but the deadline for the District to act on the LOHE for the 2019 tax year has

6

passed. The District then re-urges its claim that the trial court never had jurisdiction because Martin and the State did not exhaust their administrative remedies. Because the District's motion to dismiss challenges our subject matter jurisdiction over this cause, we will address it first. *See Crites v. Collins*, 284 S.W.3d 839, 840 (Tex. 2009) (per curiam) (noting that jurisdictional questions must be addressed before merits).

"An appeal is moot when there is no longer a live controversy between the parties and appellate relief would be futile." *Metro. Transit Auth. v. Douglas*, 544 S.W.3d 486, 493 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). That is, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex. 2012). In this case, a live controversy exists between the parties regarding whether the District's reduction of its LOHE was valid. While the District focuses on the now-passed deadline to adopt a LOHE for the 2019 tax year and its effect on Martin's and the State's claims for prospective relief, it has ignored their claims for declaratory relief. The parties' rights may still be affected by an appellate ruling in this case, in that if this Court, or the Texas Supreme Court, were to hold that the District was prohibited from reducing the amount of its LOHE at any time between January 1, 2015, through December 31, 2019, then Martin and other affected taxpayers could litigate claims arising from any overpayment of taxes due to the improper LOHE that the District applied in tax years 2015 through 2019. Therefore, this appeal is not moot.

We turn next to the District's assertion that we lack jurisdiction because "Martin and the State did not exhaust their administrative remedies and the trial court never had

jurisdiction over their claims for reimbursement."[4]  According to the District, Martin and the State were required to pursue administrative remedies found in the Texas Tax Code, the Texas Education Code, and/or the District's own policies before bringing their claims. The District defendants argue that, because they did not do so, they failed to exhaust their remedies, thus depriving this Court of jurisdiction.  We disagree.

Ordinarily, an aggrieved party must exhaust all available administrative remedies and obtain a final agency order before seeking judicial relief.  *See City of Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 683 (Tex. 1983).  "The policy behind the exhaustion-of-remedies doctrine is to allow the agency involved to resolve disputed issues of fact and policy and to assure that the appropriate body adjudicates the dispute." *Kilgore Indep. Sch. Dist. v. Axberg*, 535 S.W.3d 21, 34 (Tex. App.—Texarkana 2017, no pet.).  This policy is intended to encourage parties to resolve disputes without resort to litigation when an administrative procedure is available.  *Id.*  However, there are exceptions to the doctrine:  (1) where an injunction is sought and irreparable harm would result; (2) where the administrative agency cannot grant the requested relief; (3) when the issue presented is purely a question of law; (4) where certain constitutional issues are involved; and (5) where an administrative agency purports to act outside its statutory powers.  *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 780 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006).

This case falls within an exception to the exhaustion-of-administrative-remedies requirement.  Here, the material facts are not in dispute.  The question before the trial

---

[4] Martin made a claim for a refund, but the State sought only declaratory relief and a writ of mandamus.

court was whether section 11.13(n-1) of the Tax Code prohibits the District from reducing the amount of its LOHE at any time between January 1, 2015, and December 31, 2019. This issue presents what is purely a question of law. Consequently, we conclude that Martin and the State were not required to exhaust administrative remedies. We therefore deny the District's motion to dismiss.

## IV.  Standard of Review

Where, as here, both sides move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). A court's ruling on a motion for summary judgment is reviewed de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a traditional motion for summary judgment, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Where competing summary judgment motions are filed, "each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Garland*, 22 S.W.3d at 356.

## V.  The State's Motion for Summary Judgment

The State intervened to invalidate the District's reduction of the LOHE and to require prospective compliance with S.B. 1. The trial court granted summary judgment for the State with regard to its claims against the District, but denied summary judgment as to the State's claims against the individual District defendants. The State did not

9

appeal the trial court's judgment in favor of the individual District defendants.  In its appeal

challenging the summary judgment in favor of the State, the District argues (1) the State

lacks standing to assert its claims for declaratory judgment, (2) the State failed to exhaust

administrative remedies, (3) the trial court lacked jurisdiction to render the final judgment

because the District parties are immune from suit, and (4) S.B. 1 is impermissibly

retroactive.

A. The State's Standing

In its first issue, the District challenges the State's standing, noting that the State

has not presented evidence that it owns property in Carson County subject to the LOHE

at issue in this suit, that it has paid ad valorem taxes to the District, or that it is due a

refund because of the reduced LOHE.  Nor, claims the District, has the State shown that

it has been personally aggrieved.  However, the State's basis for intervening in the case

did not rest on such grounds.  The State intervened seeking relief under the Declaratory

Judgment Act, which allows a person who is interested under a deed or other contract,

or whose rights, status, or other legal relations are affected by a statute, to obtain a

declaration of rights, status, or other legal relations thereunder.  TEX. CIV. PRAC. & REM.

CODE ANN. § 37.004(a) (West 2015).  The State relied on section 37.006(b) of the Texas

Civil Practice and Remedies Code, a provision of the Declaratory Judgment Act providing

that when declaratory relief is sought and the constitutionality of a statute is at issue, the

attorney general of the state is "entitled to be heard."  *Id.* § 37.006(b) (West 2015).  The

State's entitlement to be heard has been interpreted as allowing the State to intervene in

litigation involving a challenge to the validity of a statute.  *See Tex. Dept. of Transp. v.*

*Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (per curiam) (observing that "the state may be

10

a proper party to a declaratory judgment action that challenges the validity of a statute"). Moreover, the State has an interest in enforcing its laws. *See, e.g., New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S. Ct. 359, 54 L. Ed. 2d 439 (1977) (Rehnquist, J.) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Therefore, we conclude the State is a proper party in this case and has standing to seek relief.

B. Exhaustion of Administrative Remedies

The District next contends that the State failed to exhaust administrative remedies, thereby depriving the trial court of jurisdiction. As set forth above, when the issue presented is purely a question of law, exhaustion of administrative remedies is not required. Because of the nature of this claim, prior resort to the administrative process was not necessary. The trial court did not err in assuming jurisdiction over the State's claim. *See Strayhorn*, 128 S.W.3d at 780.

C. Governmental Immunity

In its third point, the District urges that the trial court lacked jurisdiction to render the final judgment because the District parties are immune from suit under the doctrine of governmental immunity. Governmental immunity is the derivative form of sovereign immunity that may extend to political subdivisions of the state, including school districts. *See, e.g., Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429-30 (Tex. 2016). Such immunity requires the consent of the state or state entity before it can be sued. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

11

Both the State and Martin pleaded ultra vires claims against the individual District defendants in their official capacities. An ultra vires action is one by which the plaintiff seeks relief against a government actor, sued in his official capacity, who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009). Under *Heinrich*, such ultra vires claims are not barred by governmental immunity; however, the only remedies available to the plaintiff are prospective declaratory and injunctive relief.

The District asserts that, under *Heinrich*, immunity nonetheless bars the State's claims because of the State's "request for a refund of monies." *Id.* at 370-72 (in suit against board of trustees of city pension fund and others, plaintiff could not receive monetary damages, only prospective injunctive relief). However, the State did not seek a tax refund or money damages; it sought only declaratory and injunctive relief. Its motion for summary judgment requests (1) a declaration that the District parties are "in violation of section 11.13(n-1) of the Tax Code and article VIII, section 1-b(e) of the Texas Constitution for reducing White Deer ISD's 2014 LOHE for the 2015 through 2019 tax years," and (2) mandamus to reinstate the 2014 LOHE for the 2015 to 2019 tax years. Because the State only seeks equitable and injunctive relief, we conclude that its claims are not barred by governmental immunity.

D. Retroactivity of S.B. 1

In its fourth point, the District claims that the final judgment should be reversed because S.B. 1 is impermissibly retroactive. According to the District, S.B. 1 was not yet

effective when the District's board voted to reduce the LOHE in June of 2015, because the constitutional amendment was not ratified until November of 2015 and, consequently, the only way to prohibit the District's 2015 action is to apply S.B. 1 retroactively. Such an application of S.B. 1, the District argues, violates the prohibition against retroactive laws under the Texas Constitution, which provides that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16.

In response, the State argues that local government entities such as the District do not have a constitutional right to avoid retroactive legislative enactments. The Texas Supreme Court has recognized that although "[t]he Legislature cannot by retroactive legislation applicable to municipal corporations destroy or impair vested rights which persons have acquired in their relationships with the municipal corporations," those "[m]unicipal [c]orporations do not acquire vested rights against the State." *Deacon v. Euless*, 405 S.W.2d 59, 62 (Tex. 1966). In *Deacon*, the court used this reasoning to apply a statute retrospectively to invalidate a city's annexation ordinance that had been adopted before the statute's effective date. *Id.* at 62.

Because statutes are unconstitutional only when they operate retroactively to "destroy or impair" vested rights, and the District, as a governmental entity, has no vested rights against the State, we conclude that the District's interest in tax revenues is not a vested right to which the prohibition on retroactive laws applies. Accordingly, we reject the District's constitutional claim.

Therefore, we affirm the trial court's final judgment for the State insofar as it declared that (1) section 11.13(n-1) of the Texas Tax Code is constitutional as a matter of law, (2) section 11.13(n-1) of the Texas Tax Code prohibits school districts from repealing or reducing the amount of a LOHE at any time between January 1, 2015, through December 31, 2019, that was adopted for the 2014 tax year, and (3) the acts of the District are in violation of S.B. 1 and S.J.R. 1.

## VI. Martin's Motion for Summary Judgment

The trial court granted Martin's motion for summary judgment on her claims against the District, but denied summary judgment on her claims against the individual District defendants. Unlike the State, Martin filed a cross-appeal challenging the trial court's denial of this portion of her motion for summary judgment.

A. Administrative Remedies and Immunity

In its appeal challenging the summary judgment in favor of Martin, the District argues that (1) Martin failed to exhaust her administrative remedies; (2) the trial court lacked jurisdiction to render the final judgment because the District parties are immune from suit; and (3) S.B. 1 is impermissibly retroactive.[5]

As we have already determined that the issue presented is purely a question of law, we conclude that Martin was not required to exhaust administrative remedies and the trial court did not err in assuming jurisdiction over her claim. Additionally, as set forth

---

[5] In a footnote, the District also argues that Martin lacks standing because no evidence establishes that she paid ad valorem taxes. The record shows that Martin owned a homestead in White Deer and owed school property taxes in relevant tax years. We therefore conclude that Martin has standing to pursue her claims.

above, governmental immunity was waived because Martin brought ultra vires claims challenging the actions of the individual District defendants.[6]  *See Heinrich*, 284 S.W.3d at 372-73.

B. Retroactivity

The District's next argument is that any prohibition on the District's June 2015 decision to reduce its LOHE would require an impermissible retroactive application of S.B. 1.  Section 26 of S.B. 1 states that the act "applies beginning with the 2015 tax year," i.e., the tax year that began on January 1, 2015.  S.J.R. 1 provides that its constitutional amendments "take effect for the tax year beginning January 1, 2015."  So, both S.B. 1 and S.J.R. 1 "take effect" on January 1, 2015.

The cardinal rule in statutory interpretation and construction is to ascertain and effectuate the Legislature's intent.  *See Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013). The plain language of the statute is usually the best guide in making that determination. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 354 (Tex. 2013).  In our view, the language of the statute indicates that the Legislature intended for any LOHE adopted by a school district, municipality, or county for the 2014 tax year to stay at (or above) that level until the end of the 2019 tax year.  *See* TEX. TAX CODE ANN. § 11.13(n-1).  This intention is confirmed by the language in S.B. 1 and S.J.R. 1 specifying that the prohibition on reduction or repeal is to apply beginning in the 2015 tax year.  Therefore, from January

---

[6] The District also asserts that school board trustees and school district employees are protected by "educator statutory immunity" under section 22.0511 of the Texas Education Code.  Section 22.0511 affords immunity from personal liability.  *See* TEX. EDUC. CODE ANN. § 22.0511 (West 2019).  In this case, the trustees and superintendent were not sued in their individual capacities, so this provision does not apply.

1, 2015, through December 31, 2019, any tax calculations must include the 2014 LOHE, and the LOHE cannot be reduced or repealed in that time.

Because section 11.13(n-1) is merely intended to require reference to a prior year's LOHE in calculating tax obligations in 2015 through 2019, it is not retroactive. *See, e.g., Gen. Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 866 (Tex. App.—Austin 1996, writ denied) (franchise tax measuring one year's tax liability based on prior year's business activities was not retroactive); *see also Lewis v. Fid. & Deposit Co.*, 292 U.S. 559, 571, 54 S. Ct. 848, 78 L. Ed. 1425 (1934) ("A statute is not retroactive merely because it draws upon antecedent facts for its operation."). Accordingly, the statute operates prospectively, not retroactively.

However, to the extent that taxing units such as the District took formal action to reduce or repeal their LOHE prior to the November 3, 2015, election, section 11.13(n-1) has the retroactive effect of voiding any such reduction or repeal. That is, once section 11.13(n-1) became effective, it not only prohibited a reduction or repeal for tax years 2016-2019, but also acted to invalidate the District's reduction of the amount of the LOHE for tax year 2015. It is this retroactivity that the District claims is constitutionally impermissible.

A retroactive law is one "that acts on things which are past." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002). Retroactive effect alone does not make a statute unconstitutional. *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 55 (Tex. 2014). In a challenge to a statute's constitutionality, we begin with the

16

presumption that the statute is constitutional, with the burden to establish otherwise on the challenging party. *Id.*

A statute is unconstitutionally retroactive only if, when applied, it "takes away what should not be taken away." *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 143 (Tex. 2010). As the Texas Supreme Court explained in *Robinson*, "courts must consider three factors in light of the prohibition's dual objectives: the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the nature of the prior right impaired by the statute; and the extent of the impairment." *Id.* at 145. Our Supreme Court has rejected the "vested rights" analysis in favor of this three-factor inquiry. *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 161 (Tex. 2018).

The public interest served by S.B. 1 and section 11.13(n-1) is the reduction of property taxes for Texas homeowners. *See* SENATE RESEARCH CTR., BILL ANALYSIS, Tex. S.B. 1, 84th Leg., R.S. (2015) at 1; HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. S.B 1, 84th Leg., R.S. (2015), at 1. Legislators contemplated that this reduction of taxes "would put more money in consumers' pockets, allowing more money to be used more efficiently in the economy." *Id.* at 3-4. In our view, property tax relief is a strong public purpose that serves a compelling public interest.[7]

The next of the three factors concerns the nature of the right impaired by the statute. *In re Occidental*, 561 S.W.3d at 161*.* According to the District, it had the "vested

---

[7] The District argues that the Texas Supreme Court requires the public interest to rise to the level of a documented "crisis" before finding a statute permissibly retroactive. We decline to read that prerequisite into the standards set out in *Robinson*.

rights and obligation to set a tax rate for the District." In other words, it had a right to reduce the exemption and thereby gather more taxes.

From the District's own description of the right involved, one can easily see that it does not implicate the District's ability to assess taxes for the operation of its schools. That is, the District could still assess and collect taxes. Rather, the purported right implicates components of the equation used in calculating the amount of tax due: what exemptions are available to the taxpayer and at what rate taxpayer property will be taxed. Modifying these components of the overall equation through the application of S.B. 1 is similar to modifying a procedural rule, that rule being the method by which 2015 and future tax liability is determined. As said most recently in *Occidental*, "changes in the law that merely affect remedies or procedure . . . are usually not unconstitutionally retroactive." *Id.*

Moreover, while the mode of calculating the 2015 tax liability had been set by the time of the November 3, 2015 election, the District's legal authority to collect those taxes did not arise until February 1, 2016. Statute provides for the levy of a lien on a taxpayer's property as of January 1 of the tax year. TEX. TAX CODE ANN. § 32.01(a) (West Supp. 2018). So, those within the District had imposed upon their property as of January 1, 2015, a lien for payment of their 2015 taxes. But the amount payable still had to be determined through appraisals, the designation of tax rates, and so forth. Once determined, payment of the liability became due once the tax bill was sent to and received by the taxpayer. However, payment was not delinquent unless the tax was still unpaid by February 1 of the following year, or 2016. *Id.* at § 31.02(a). The taxing entity could not enforce payment unless and until payment of the tax was delinquent. *Id.* at § 33.41(a).

18

This statutory scenario means that prior to November 3, 2015, the District may have had the legal authority to designate the equation to use in calculating 2015 tax liability, but it lacked the authority to collect the sum derived until February 1, 2016. What intervened during the interim was the November 3, 2015 election. That election triggered the application of S.B. 1 and the Legislature's edict establishing the equation for 2015. The statute merely stopped the District from collecting what it had yet to have the authority to collect. The law merely required the District to undertake recalculations.[8]

In short, the District's interest in 2015 taxes had yet to come to complete fruition when the Texas Legislature and the November 3, 2015 election intervened. Any interest in or right to the 2015 taxes derived through the earlier application of its equation was inchoate. *See Allbee v. Day*, 616 S.W.2d 270, 273-74 (Tex. App.—San Antonio 1981, writ ref'd n.r.e.) (defining inchoate to mean imperfect, partial, unfinished, and incomplete). All the District may have had, prior to November 3, 2015, was an interest in designating the components of the equation. A requirement to change the components of an existing equation has lesser impact when the results of the equation were not enforceable when derived. This is especially so when S.B. 1 had been passed by the Legislature and its upcoming effect on the equation (if approved by the voters) undoubtedly was known when the District adopted the equation. And, it is rather doubtful that voters would have opted to pay more taxes when given the chance to pay less in the age of rising taxation. Therefore, we do not view the District's ability to receive additional tax revenues by cutting a property tax exemption as a substantial right.

---

[8] This, of course, assumes that the District had sent and taxpayers had received the 2015 tax bill before the November election. If either had not occurred, the impact of S.B. 1 on the right involved was even less.

The final *Robinson* factor is "the extent of the impairment" of the prior right. First, we note that the new legislation only reached back from November 3, 2015 (the date the constitutional amendment was ratified, fixing the calculation basis for the 2015 LOHE), to June 30, 2015 (the date the District reduced its LOHE), to invalidate the District's action. In addition, the prohibition on repealing or reducing the amount of the LOHE was part of the overall scheme to ensure that Texas homeowners received the benefit of the increased homestead exemption. S.B. 1 included provisions to offset property tax losses due to the increased homestead exemption such that school districts' shortfalls were mitigated by the state, so school districts were no worse off in tax year 2015 as compared to 2014 as a result of section 11.13(n-1). We therefore conclude that the extent of any impairment is slight.

When analyzing retroactive provisions, the Supreme Court has described as "benign and legitimate" the purposes of, among others, (1) preventing circumvention of a new statute in the interval immediately preceding its passage, and (2) giving comprehensive effect to a new law the Legislature considers salutary. *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 267-68, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). Considering the balance of the *Robinson* factors, as set forth above, and bearing these legitimate purposes and the presumption constitutionality in mind, we conclude that the retroactive effect of subsection 11.13(n-1) does not run afoul of the Texas Constitution.

C. Injunctive Relief, Disgorgement, and Refund

In addition to granting the declaratory relief requested by Martin and the State, the trial court ordered the District to "stop assessing and collecting property taxes through

20

December 31, 2019, that are subject to the local option homestead exemption that it adopted for the 2014 tax year." The parties have not complained of this affirmative grant of relief on appeal. Therefore, we will not disturb this portion of the trial court's judgment. *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (failure to offer argument, citations to record, or citations to authority waives issue on appeal).

The trial court further ordered "that Defendant White Deer Independent School District disgorge and refund to Plaintiff those property taxes that it collected for tax years 2015, 2016, and 2017 from the Plaintiff, if any, that are subject to the local option homestead exemption that it adopted for the 2014 tax year." The District asserts that Martin did not carry her burden to be entitled to such relief. We agree.

While Martin's pleadings do not seek disgorgement, they do seek a refund of the ad valorem taxes she paid that were subject to the wrongfully repealed LOHE. The District countered that Martin's claim for a tax refund is a request that the court grant retrospective relief and is therefore barred by immunity. *See Heinrich*, 284 S.W.3d at 373-77 (barring retrospective relief in suit to remedy an ultra vires action).

Texas law recognizes an exception to governmental immunity "when a plaintiff seeks reimbursement of an allegedly unlawful tax, fee, or penalty that was paid involuntarily and under duress." *Garcia v. City of Willis*, No. 17-0713, 2019 Tex. LEXIS 423, at *12 (Tex. 2019). In this case, while Martin alleged that she paid her taxes under duress, she has failed to offer competent summary judgment evidence as to the amounts she claims were involuntarily paid.

As the summary judgment movant seeking a tax refund, Martin bore the burden of establishing that amount. *See id.* Martin failed to produce competent summary judgment evidence to substantiate these claims. Because the record does not establish the amount of the refund to which Martin is entitled, the trial court erred in granting summary judgment for Martin on this claim. We therefore reverse the trial court's judgment to the extent that it orders the District to disgorge and refund to Martin the property taxes that it collected from her for tax years 2015, 2016, and 2017, that are subject to the 2014 LOHE, and we remand that matter to the trial court for further proceedings consistent with this opinion.

D. Martin's Cross-Appeal

In her cross-appeal, Martin urges that the district court erred by rejecting her ultra vires claims against the individual defendants. We agree, in part.

As explained in *Heinrich*, the ultra vires doctrine applies when a government official's conduct is "without legal or statutory authority" or when the official failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372. The Texas Supreme Court has clarified that an official acts without legal authority when he "exceeds the bounds of his granted authority or *if his acts conflict with the law itself.*" *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) (emphasis added).

Martin alleges that the individual defendants acted ultra vires, i.e., without legal authority, by reducing the LOHE and by continuing to assess and collect taxes on those previously exempted homestead values. In response, the District argues that the acts of the individuals could not have been ultra vires because the individual trustees have discretion in determining how to exercise their authority to vote on matters before the

22

board. The District cites the *Kilgore* case for the proposition that "the vote or nonvote of an individual Trustee, by definition, cannot be an *ultra vires* act." *Kilgore*, 535 S.W.3d at 30-31.

We recognize that the individual board members are expressly granted the authority to vote. Generally speaking, then, these officials do not exceed the bounds of their authority merely by casting votes. However, the analysis does not end there. Because officials may act without legal authority if their acts "conflict with the law itself," *see Hous. Belt*, 487 S.W.3d at 158, we must go one step further than the court in *Kilgore*. We must consider not just the legality of the act of voting, but the legality of the directly resulting enactment.

Any reduction of the LOHE is expressly prohibited by section 11.13(n-1) of the Tax Code. The statutory language is directed to the board members: "The governing body of a school district . . . that adopted an exemption . . . for the 2014 tax year may not reduce the amount of or repeal [the LOHE]." TEX. TAX CODE ANN. § 11.13(n-1). Because the statute denotes that maintaining the LOHE at the 2014 level is a requirement of state law, not a choice, the board members had no leeway to substitute their own judgment for that of the Legislature.[9] Government officials do not have discretion to carry out actions that violate state law.

---

[9] We have determined that the June 2015 vote to reduce the LOHE was void as a result of the constitutional amendment passed in November of that year. We therefore do not determine whether the 2015 vote was ultra vires. However, following the enactment of the constitutional amendment, the law was clear that the LOHE could not be reduced or repealed from the 2014 level, so votes to reduce or repeal the LOHE after that point were ultra vires.

23

In the recent case of *Chambers-Liberty Ctys. Navigation Dist. v. State*, the Texas Supreme Court considered the viability of ultra vires claims against the commissioners of a coastal navigation district. 575 S.W.3d 339, 349-55 (Tex. 2019) (combined appeal & orig. proceeding). In its suit against the district and commissioners, the State alleged that the commissioners had exceeded their legal authority by entering into a lease of certain submerged land. The court noted that the general authority of the navigation district to lease land was not in dispute, but it went on to say that "general authority to lease land is not a license to enter into any lease imaginable." *Id.* at 351. The navigation district "may exercise its authority to lease land only when doing so is consistent with its limited statutory purposes . . . ." *Id.* The court determined that the lease entered by the navigation district infringed upon the superior right of the Texas Parks and Wildlife Department to regulate the conservation and harvesting of oysters. *Id.* at 353. Consequently, the court found that the commissioners had exceeded their authority by entering the lease. The State's ultra vires claims against the commissioners were not barred.

For the same reasons, we cannot accept as true the District's position that the board members are within the bounds of their legal authority merely because they used a permissible means (voting) to achieve an impermissible result (reducing the LOHE). The board members had authority to exercise their general right to vote, but they acted in an ultra vires manner by approving a reduction of the LOHE when such action was preempted by state law. We find untenable the argument that each board member can cast a vote authorizing the board, as a body corporate, to take action that is prohibited by

24

the Texas Tax Code and then avoid answering for the board's failure to comply with the law.

We are mindful of the District's argument that "the actions of a board of trustees are the acts of a collective body, and not the individual trustees." However, it is only through the individual board members' votes that acts of the board may be effectuated. Ultra vires suits are an "attempt to reassert the control *of* the state" over its agents. *Heinrich*, 284 S.W.3d at 372. Those government agents, sued in their official capacity, are the proper defendants in an ultra vires suit.

The summary judgment evidence in this case shows that the board members' vote to reduce the LOHE in 2015 from twenty percent to ten percent was unanimous. The votes in 2016 and 2017 to maintain the LOHE at this reduced ten percent level were also unanimous.[10] However, we find that the record does not support Martin's ultra vires claims against Superintendent Vaughn. Martin's pleadings do not relate what action Vaughn took that was "without legal or statutory authority" or what ministerial act he failed to perform, and the summary judgment evidence does not reveal any such action or inaction. For example, there is no indication that Vaughn voted to reduce the LOHE. Therefore, we conclude that the trial court properly granted summary judgment on the official-capacity claims against Superintendent Vaughn and board member Pipes. As to all other individual District defendants, we reverse the trial court's order denying Martin's motion for summary judgment.

---

[10] The summary judgment evidence shows that each defendant board member cast votes in favor of reducing the LOHE from its 2014 level, with the exception of Ray Pipes, who was absent.

**VII. Conclusion**

For the foregoing reasons, we reverse the portion of the trial court's judgment to the extent that it denied summary judgment on the ultra vires claims against defendants Haiduk, Bolton, Bichsel, Grange, Barrow, and Brown. We affirm the trial court's judgment insofar as it declared that (1) section 11.13(n-1) of the Texas Tax Code is constitutional as a matter of law; (2) section 11.13(n-1) prohibits school districts from repealing or reducing the amount of a LOHE, at any time between January 1, 2015, through December 31, 2019, that was adopted for the 2014 tax year; and (3) the acts of the District are in violation of S.B. 1 and S.J.R. 1, such that the District's reduction of its LOHE has no effect and is void as a matter of law. We affirm the trial court's judgment ordering the District to stop assessing and collecting property taxes through December 31, 2019, that are subject to the LOHE that it adopted for the 2014 tax year. We reverse the portion of the trial court's judgment ordering the District to disgorge and refund to Martin those property taxes that it collected from her for tax years 2015, 2016, and 2017 that are subject to the LOHE it adopted for the 2014 tax year, and remand those claims for further proceedings consistent with this opinion.

Judy C. Parker
Justice