## MIROYAN v. UNITED STATES

No. A–99.   Decided August 8, 1978*

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicants McGinnis and Miroyan seek a stay of the mandate of the United States Court of Appeals for the Ninth Circuit pending both the filing of a petition for a writ of certiorari and this Court's final disposition of their case. Their convictions for several drug-related offenses were secured largely on evidence obtained through the use of an electronic tracking device, or "beeper," attached to an airplane used by applicants to import several hundred pounds of Mexican marihuana into this country. Applicants maintain that the Government's installation and use of the beeper violated their rights under the Search and Seizure Clause of the Fourth Amendment and that the decision of the Ninth Circuit conflicts with decisions of other Courts of Appeals. Twice within the last year this Court has declined to review similar Fourth Amendment claims in strikingly similar cases. Houlihan v. State, 551 S. W. 2d 719 (Tex. Crim. App.), cert. denied, 434 U. S. 955 (1977); United States v. Abel, 548 F. 2d 591 (CA5), cert. denied, 431 U. S. 956 (1977). This fact leads me to conclude that unless applicants can demonstrate

---

*Together with No. A–87, McGinnis v. United States, also on application for stay of the same mandate.

a conflict among the Courts of Appeals of which this Court was unaware at the time of the previous denials of certiorari, or which has developed since then, applicants' petition for certiorari will not command the four votes necessary for the granting of the writ in their case. While there is undoubtedly a difference of approach between the Circuits on the question, I am not sure that there is a square conflict, and I am even less sure that the granting of certiorari in this case would result in the resolution of any conflict which does exist. I think it quite doubtful that applicants' petition for certiorari will be granted and have accordingly decided to deny the application for a stay.

Miroyan arranged with Aero Trends, Inc., of San Jose, Cal., to rent a Cessna aircraft for one week. On the day before the beginning of the rental period, pursuant to a United States Magistrate's order and with the aircraft owner's express permission, Drug Enforcement Administration (DEA) agents installed a beeper in the aircraft. Miroyan and McGinnis then departed in the rented airplane and journeyed to Ciudad Obregon in the Republic of Mexico. Following in a United States Customs aircraft, federal agents monitored applicants' trip into Mexico by means of the beeper's signals and visual sightings. On May 11 Customs personnel in Phoenix, Ariz., picked up the beeper's signals and determined that the aircraft was returning to the United States. Federal agents again took to the air and tracked the aircraft's progress to Lompoc, Cal., where McGinnis deplaned and checked into a Lompoc motel. Miroyan flew on to nearby Santa Ynez airport and was arrested while transferring several hundred pounds of marihuana from the airplane to a pickup truck. McGinnis was arrested at his motel room in Lompoc. Both men were separately tried and convicted of conspiracy to possess a controlled substance with intent to distribute, importation of a controlled substance, and possession of a controlled substance with intent to distribute.

Applicants appealed their convictions to the Ninth Circuit, urging, *inter alia,* that the District Court had erred in refusing to suppress the marihuana and other evidence obtained as a result of the use of the beeper. In essence, applicants argued that the installation of the beeper and the monitoring of its signals constituted a search or searches within the meaning of the Fourth Amendment. Because the installation of the beeper had been authorized by a federal Magistrate, applicants focused their attack on the sufficiency of the affidavit upon which the Magistrate's order had been predicated. The Ninth Circuit examined the Fourth Amendment implications of both the installation of the beeper and the monitoring of its signals. Finding no distinction between visual surveillance and surveillance accomplished through the use of an electronic tracking device, the court held that the mere use of the beeper to monitor the location of the aircraft as it passed through public airspace did not infringe upon any reasonable expectation of privacy and therefore did not constitute a search subject to the warrant requirement of the Fourth Amendment. It went on to hold that the installation of the device, having been performed with the owner's express consent and prior to the beginning of the rental period, did not violate applicants' Fourth Amendment rights. The court, having found neither search nor seizure, did not reach the question concerning the sufficiency of the affidavit.

Both the decision in this case and the decisions with which applicants claim it is in conflict used *Katz* v. *United States,* 389 U. S. 347 (1967), as their point of departure. There this Court held that "[t]he Government's activities in electronically listening to and recording the petitioner's [telephone conversation] violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.,* at 353.

In other cases in which enterprises similar to applicants'

have been frustrated with the aid of electronic tracking devices, defendants have frequently cited *Katz* for the proposition that installation and use of the devices are searches subject to the strictures of the Fourth Amendment. In support of their contention that the Ninth Circuit's position on this question is at odds with that of other Circuits, applicants point to *United States* v. *Moore,* 562 F. 2d 106 (CA1 1977) and *United States* v. *Holmes,* 521 F. 2d 859 (CA5 1975).

In *Moore* DEA agents, without the benefit of a warrant or the owner's consent, surreptitiously attached beepers onto two vehicles parked by defendants in a shopping center parking lot. As the Court of Appeals for the First Circuit framed the issue: "The basic question [was] whether the use of beepers so implanted to monitor the movements of the U-Haul van and the 1966 Mustang . . . violated defendants' reasonable expectations of privacy." *United States* v. *Moore, supra,* at 112. That court answered the question affirmatively, but reasoned that the lessened expectation of privacy associated with motor vehicles justifies the installation and use of beepers without a warrant so long as the officers installing and using the device have probable cause. Finding the electronic surveillance in that case supported by probable cause to believe that defendants planned to manufacture a controlled substance, the court held that use of the beepers did not violate defendants' Fourth Amendment rights.

In *Holmes* Government agents attached a beeper to defendant's van while defendant was in a nearby lounge negotiating with an undercover agent for the sale of 300 pounds of marihuana. The tracking device ultimately led to the seizure of over a ton of marihuana. In affirming the District Court's order suppressing all evidence obtained through the use of the beeper, a panel of the Fifth Circuit held that installation of the beeper constituted a search within the Fourth Amendment and that Government agents "had no right to attach the beacon without consent or judicial authorization." *United*

*States* v. *Holmes, supra,* at 865. An evenly divided en banc court affirmed the panel's decision. 537 F. 2d 227 (1976).

Both *Moore* and *Holmes* are plainly different from this case with respect to one important fact: the beeper leading to the arrest of McGinnis and Miroyan was installed on their rented airplane with the owner's express consent before possession of the aircraft passed to applicants. Equally plainly, the Fourth Amendment analysis employed by the Court of Appeals for the First Circuit differs from that employed by the Court of Appeals for the Ninth Circuit in this case. I do not think that the same can be said with respect to the Fifth and Ninth Circuits: *Holmes* was ultimately an affirmance of the District Court by an equally divided Court of Appeals on rehearing en banc; and, indeed, on two separate occasions since *Holmes,* the Fifth Circuit has rejected Fourth Amendment claims on facts virtually identical to those of the instant case on the ground that the owner-authorized installation of beepers on the airplanes there involved came within the third-party-consent exception to the warrant requirement. See *United States* v. *Cheshire,* 569 F. 2d 887 (1978); *United States* v. *Abel,* 548 F. 2d 591, cert. denied, 431 U. S. 956 (1977).

The question, then, it seems to me, boils down to how significant the difference between the approaches of the First and Ninth Circuits is. Assuming that it is sufficiently significant to ultimately lead this Court to grant certiorari to resolve the difference, is the Court likely to do so in this case? I think that in all probability this Court may eventually feel bound to decide whether Government agencies must have probable cause to install tracking devices on motor vehicles or in articles subsequently used in a criminal enterprise when the installation is expressly authorized by the owner of the vehicle or article. Such a decision could require a choice between the Ninth Circuit's view that the operator of an airplane has no legitimate expectation of

privacy which would prevent observation of the plane's movement through the public airspace, and the First Circuit's view that the operator of a vehicle does have an expectation "not to be carrying around an uninvited device that continuously signals his presence." *United States* v. *Moore, supra,* at 112. Or conceivably this Court could choose to adopt the third-party-consent ruling of the Fifth Circuit. See *United States* v. *Cheshire, supra.*

But because the question is an important and recurring one, the Court is apt to feel that the case taken under consideration should pose the issue as clearly as possible. Having within the past year denied certiorari in two cases strikingly similar to applicants', the Court is not likely to grant certiorari in this case unless such an action would appear to offer the strong likelihood of deciding an issue on which a square conflict exists. I simply cannot tell from the applicants' motion papers or from the opinion of the Court of Appeals for the Ninth Circuit whether the District Court made any finding on the existence of probable cause, or whether the applicants' arguments to that court went to a lack of probable cause as well as to the insufficiency of the affidavit in support of the warrant. If upon review of the applicants' petition for certiorari and the Government's response thereto, it appears that there was in fact probable cause. to justify installation of the beeper in this case, it seems to me very likely that this Court would hesitate to grant certiorari to decide the abstract proposition of whether probable cause is in fact required.

This latter factor also bears to some extent on applicants' claim of irreparable injury should a stay not be granted. That claim is the customary one that should a stay be denied, but certiorari be granted and the position of the First Circuit be adopted as the law by this Court, they will have served time in prison under a judgment of conviction which will eventually be reversed. But on the papers before me, I think that even under their most favorable hypothesis, the most

applicants could expect is a remand to the Ninth Circuit for consideration by that court or by the District Court of whether there was probable cause. And if that question was resolved adversely to the applicants, there is no reason to think that their judgments of conviction would not again be affirmed by the Ninth Circuit.

Accordingly, applicants' motions to stay the mandate of the United States Court of Appeals for the Ninth Circuit are denied.