**18-2380**
*United States v. Silver*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

——————————

August Term, 2018

(Case Argued: March 13, 2019        Case Decided: January 21, 2020
Motion Filed: February 27, 2020      Motion Decided: April 1, 2020)

Docket No. 18-2380

——————————

UNITED STATES OF AMERICA,

*Appellee,*

THE NEW YORK TIMES COMPANY, NBCUNIVERSAL MEDIA, LLC,

*Intervenors,*
v.

SHELDON SILVER,

*Defendant-Appellant.*

——————————

Before:

WESLEY, LOHIER, and SULLIVAN, *Circuit Judges*.

——————————

A jury convicted Defendant-Appellant Sheldon Silver of two counts each of honest services mail fraud, honest services wire fraud, and Hobbs Act extortion, and one count of money laundering. Silver appealed, arguing that the United States District Court for the Southern District of New York (Caproni, *J.*) erred in instructing the jury on the elements of honest services fraud and Hobbs Act extortion. On January 21, 2020, we issued an opinion vacating and dismissing three of Silver's seven counts of conviction, affirming the remaining four counts, and remanding for resentencing. *See United States v. Silver*, 948 F.3d 538 (2d Cir. 2020).

Silver now moves this Court to stay issuance of the judgment mandate pending his filing a petition for certiorari to the Supreme Court. Silver presents no substantial questions raising either a reasonable probability that four justices will vote to grant certiorari, or a fair prospect that five justices will vote to reverse this Court's judgment. Furthermore, Silver fails to show good cause for issuing a stay.

For these reasons Silver's motion is **DENIED**.

Meir Feder, James Loonam, Andrew J.M. Bentz, Jones Day, New York, NY & Washington, D.C., *for Defendant-Appellant*.

Daniel C. Richenthal, Assistant United States Attorney, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

_____

PER CURIAM:

Silver moves to stay issuance of the judgment mandate pending the filing and disposition of a petition for a writ of certiorari he intends to file with the United States Supreme Court. Silver presents three arguments that he intends to

2

make in his petition. First, Silver argues, as he did on appeal, that honest services fraud bribery and Hobbs Act extortion under color of right require a "meeting of the minds" agreement. Second, Silver argues that the Supreme Court has questioned the continuing validity of *Evans v. United States*, 504 U.S. 255, 268 (1992), and that *Evans* should be overruled. Third, Silver argues that this Court's harmless error analysis was improper because the Government failed to argue that, if there were an error in the jury instructions, that error was harmless, and because Silver had no opportunity to address the harmless error question. Silver also claims there is good cause to stay issuance of the judgment mandate because, if he is ultimately successful, he will have needlessly served time in prison.

We find no merit in Silver's arguments. This panel rejected Silver's first argument, at length, in our opinion on Silver's appeal. Silver's argument concerning *Evans* does not meet the stringent and extraordinary standard required for granting a stay pending writ of certiorari. Finally, Silver's manufactured circuit split on the harmless error issue lacks any precedential support. Furthermore, Silver fails to demonstrate good cause for a stay.

Silver's motion is therefore **DENIED**.

## BACKGROUND

The facts and the procedural history of this case are well documented in the prior decisions of this Court and of the district court. *See United States v. Silver*, 864 F.3d 102 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018); *United States v. Silver*, No. 15-Cr-93 (VEC), 2018 WL 4440496 (S.D.N.Y. Sept. 17, 2018); *United States v. Silver*, 948 F.3d 538 (2d Cir. 2020) (the "Opinion").

After this Court issued its latest opinion, Silver moved for both rehearing and rehearing *en banc*; the motion was denied without comment on February 21, 2020. Seven days later Silver filed the instant motion seeking a 90-day stay of the issuance of the judgment mandate pending the preparation, filing, and disposition of a petition for writ of certiorari with the United States Supreme Court. Under Federal Rule of Appellate Procedure 41(b), issuance of the judgment mandate is automatically stayed pending this Court's resolution of Silver's motion.

## DISCUSSION

Federal Rule of Appellate Procedure 41(d) permits parties to move to stay the judgment mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. Fed. R. App. P. 41(d). To succeed in that motion, however, one

"must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1).

In his motion for a stay, Silver presents three questions he intends to raise for the Supreme Court: (1) whether bribery under either Hobbs Act extortion or honest services fraud requires an "agreed upon exchange," *see* Mot. at 11; *see also id.* at 5–8, amounting to a meeting-of-the-minds agreement; (2) whether a conviction for Hobbs Act extortion can be premised upon a theory of bribery in view of two Supreme Court Justices' recent questioning of *Evans*, 504 U.S. at 268; and, (3) "whether or when" a court of appeals "can engage in a *sua sponte* harmless error analysis," in view of a divide that Silver claims exist among the courts of appeal, *see* Mot. at 6.

Silver also claims that good cause exists for a stay, because, "if [he] is resentenced before the Supreme Court grants review, then Mr. Silver will likely have to report to prison, potentially losing months of freedom before the Court decides the case . . . [which would be] unjust." *Id.* at 19.

1. **Silver Presents No Substantial Questions Raising a Reasonable Probability That Certiorari Will be Granted**

To start, the standard for presenting a "substantial question" is high. Silver's proposed petition presents no "substantial question[s]" that raise a

5

"reasonable probability" that four justices will vote to grant certiorari, nor is there a "fair prospect" that five justices will vote to reverse the Panel's judgment. *See Maryland v. King*, 133 S. Ct. 1, 2 (2012) (Roberts, *C.J.*, in chambers); *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009) (per curiam). For the reasons explained below, Silver cannot show that the Opinion "conflict[s] with the decision of another United States court of appeals on the same important matter," or "has so far departed from the accepted and usual course of judicial proceedings . . . as to call for an exercise of [the Supreme] Court's supervisory power." U.S. Sup. Ct. R. 10(a). And far from conflicting with relevant Supreme Court decisions, the Opinion reconciles recent Supreme Court decisions with this Court's precedent and the caselaw of other circuits. *Cf.* U.S. Sup. Ct. R. 10(c); *see also Silver*, 948 F.3d at 553–58, 568 (harmonizing *United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007), with *McDonnell v. United States*, 136 S. Ct. 2355 (2016)). Even if Silver could make that "exceptional" showing, *see Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007), this Court need not grant Silver's motion because "our decision to" do so "is a matter of discretion," *Khulumani v. Barclay Nat'l Bank Ltd.*, 509 F.3d 148, 152 (2d Cir. 2007).

First, Silver's "agreement" argument is the same one that we thoroughly rejected in the Opinion. *See Silver*, 948 F.3d at 547–52. Nothing in his motion

6

suggests that the Supreme Court would disagree with our analysis. Rather than engaging with our discussion of many of the same cases he now cites, Silver opts to rely upon cribbed quotations from those and other cases that are taken out of context in order to contrive a nonexistent conflict. *See* Mot. at 8–11 (discussing, *inter alia*, *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998)); *cf. Silver*, 948 F.3d at 554 n.8, 566 n.17, 570 n.21, 572 n.23. The previously undiscussed cases that Silver cites are not only distinguishable from Silver's case but are also consistent with the Opinion. *Cf., e.g.*, *United States v. Terry*, 707 F.3d 607, 614 (6th Cir. 2013) (affirming conviction of state court judge for accepting campaign contributions in return for explicit agreements to fix cases and take other official actions, and noting that "[e]ach payment did not need to be tied to a specific official act, so long as [the official] understood that, whenever the opportunity presented itself, [he] would take specific official actions on the giver's behalf" (internal quotations omitted)); *United States v. Ring*, 706 F.3d 460, 468 (D.C. Cir. 2013) ("But in context it is clear that 'agreement' is used as a synonym for specific intent."). Silver presents no reason why we should embrace the third iteration of this argument when we rejected it the first two times.

7

So too with Silver's argument that over half of the Supreme Court may now wish to overrule *Evans*. Silver relies on the fact that Justices Thomas—who dissented in *Evans*—and, to a lesser extent, Breyer recently called *Evans* into question in *Ocasio v. United States*, 136 S. Ct. 1423, 1437 (2016) (Breyer, *J.*, concurring and Thomas, *J.*, dissenting). Silver's math comes up short; he has not made a colorable showing that there is a "reasonable probability" that *four* justices will vote to grant certiorari. *See King*, 133 S. Ct. at 2. Furthermore, Silver provides no reason to think that there is a "fair prospect" that five justices will vote to overturn *Evans*, which has been the law for nearly 30 years. *See id.*

Third, Silver's manufactured circuit split regarding harmless error analysis lacks any precedential support. Initially, Silver fails to cite a case that, after even a cursory reading, validates his position. *See, e.g., United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991) ("[W]e have discretion to overlook a failure to argue harmlessness, and in deciding whether to exercise that discretion the controlling considerations are the length and complexity of the record, whether the harmlessness of the error or errors found is certain or debatable, and whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court."); *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999)

8

("Although the government makes no assertion whatsoever that the admission of [certain evidence] without adequate foundation was harmless error, this court may in its discretion initiate harmless error review in an appropriate case." (internal quotations omitted)). And contrary to Silver's contention that the Second Circuit is now at odds with other circuits, the Second Circuit has long followed the same approach. *See United States v. Dolah*, 245 F.3d 98, 107 (2d Cir. 2001) ("We have discretion to consider the harmlessness of an alleged error even though the Government has not argued this line of defense."), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 63–64 (2004); *see also United States v. Mason*, 692 F.3d 178, 184 (2d Cir. 2012). Additionally, Silver offers no reason to think this approach is wrong.

Silver's argument is particularly difficult to credit given the well-accepted standard of review for instructional error. *See United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013) ("[W]e review a district court's jury charge *de novo*, and will vacate a conviction for an erroneous charge unless the error was harmless."). Due to the nature of *de novo* review, courts of appeal are free to identify errors in jury instructions that depart from those offered by criminal defendants or the Government. Were Silver's view of the law correct, courts of appeal would be

locked into interminable cycles of remand or requests for additional briefing from the parties. Instead, the line of cases that Silver misconstrues provides courts with the *discretion* to decline harmless error review without the benefit of briefing when appropriate, such as where there is a voluminous record or other practical considerations control. *See, e.g.*, *Giovannetti*, 928 F.2d at 227. In contrast, it makes good sense to allow courts to review errors in jury instructions for harmlessness where, as in Silver's case, they can identify the relevant portions of the record and need not rely on the parties' arguments to reach a conclusion. *See, e.g.*, *Silver*, 948 F.3d at 568–72.

Finally, Silver's arguments on all points are likely to fail because the Opinion is predicated upon the rare factual scenario presented by Silver's case. *See, e.g.*, *id.* at 557 (noting that the Panel does not "suspect [the Opinion] will affect the prosecution of bribery in most cases"); *id.* at 561–62, 569–70 (discussing narrow grounds upon which Silver's conviction for Mesothelioma Scheme rested). Due to the complexity of the Government's theory at trial and the unique issues raised by the statute of limitations with regard to the Mesothelioma Scheme, Silver's case has an unusual factual context not conducive to review by the Supreme Court for the purposes of resolving broad, open questions of law. *See United States v. Johnson*,

10

268 U.S. 220, 227 (1925) ("We do not grant a certiorari to review evidence and discuss specific facts."); *see also Miroyan v. United States*, 439 U.S. 1338, 1343 (1978) (Rehnquist, *C.J.*, in chambers) (noting that, before granting certiorari, "the Court is apt to feel that the case taken under consideration should pose the issue as clearly as possible"). Thus, for these and the reasons discussed above, we find Silver's proposed petition fails to present a substantial question warranting a stay of the mandate pending disposition of a petition for writ of certiorari.

## 2. Silver Fails to Demonstrate Good Cause for a Stay

Finally, Silver fails to demonstrate good cause for a stay. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Ind. State Police Pension Tr.*, 556 U.S. at 961. Silver makes merely the "customary" claim that, "should a stay be denied, but certiorari be granted" and the Opinion be reversed, he "will have served time in prison under a judgment of conviction which will eventually be reversed." *See Miroyan*, 439 U.S. at 1343. But that is true for virtually every criminal defendant seeking a writ of certiorari. In addition, none of the questions Silver intends to raise address his conviction under Count 7s for money laundering, making it all but certain that he would serve at least some time in prison even in the unlikely event that he were to succeed before the Supreme Court on the other counts of conviction. *Cf. United States v. Randell*, 761 F.2d 122, 125–26

(2d Cir. 1985) (denying bail pending appeal where success on the merits would not likely result in reversal or an order for new trial on all of the counts for which appellant received a prison term). Silver has failed to show good cause, and thus the judgment mandate should issue.

## CONCLUSION

For the foregoing reasons, the motion is **DENIED**.