NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 12A48

### MARYLAND *v*. ALONZO JAY KING, JR.

#### ON APPLICATION FOR STAY

[July 30, 2012]

CHIEF JUSTICE ROBERTS, Circuit Justice.

Maryland's DNA Collection Act, Md. Pub. Saf. Code Ann. §2–501 *et seq.* (Lexis 2011), authorizes law enforcement officials to collect DNA samples from individuals charged with but not yet convicted of certain crimes, mainly violent crimes and first-degree burglary. In 2009, police arrested Alonzo Jay King, Jr., for first-degree assault. When personnel at the booking facility collected his DNA, they found it matched DNA evidence from a rape committed in 2003. Relying on the match, the State charged and successfully convicted King of, among other things, first-degree rape. A divided Maryland Court of Appeals overturned King's conviction, holding the collection of his DNA violated the Fourth Amendment because his expectation of privacy outweighed the State's interests. 425 Md. 550, 42 A. 3d 549 (2012). Maryland now applies for a stay of that judgment pending this Court's disposition of its petition for a writ of certiorari.

To warrant that relief, Maryland must demonstrate (1) "a reasonable probability" that this Court will grant certiorari, (2) "a fair prospect" that the Court will then reverse the decision below, and (3) "a likelihood that irreparable harm [will] result from the denial of a stay." *Conkright* v.

*Frommert*, 556 U. S. 1401, 1402 (2009) (GINSBURG, J., in chambers) (internal quotation marks omitted).

To begin, there is a reasonable probability this Court will grant certiorari. Maryland's decision conflicts with decisions of the U. S. Courts of Appeals for the Third and Ninth Circuits as well as the Virginia Supreme Court, which have upheld statutes similar to Maryland's DNA Collection Act. See *United States* v. *Mitchell*, 652 F. 3d 387 (CA3 2011), cert. denied, 566 U. S. ___ (2012); *Haskell* v. *Harris*, 669 F. 3d 1049 (CA9 2012), reh'g en banc granted, 2012 WL 3038593 (July 25, 2012); *Anderson* v. *Commonwealth*, 274 Va. 469, 650 S. E. 2d 702 (2007), cert. denied, 553 U. S. 1054 (2008); see also *Mario W.* v. *Kaipio*, 2012 WL 2401343 (Ariz. 2012) (holding that seizure of a juvenile's buccal cells does not violate the Fourth Amendment but that extracting a DNA profile before the juvenile is convicted does).

The split implicates an important feature of day-to-day law enforcement practice in approximately half the States and the Federal Government. Reply to Memorandum in Opposition 3; see 114 Stat. 2728, as amended, 42 U. S. C. §14135a(a)(1)(A) (authorizing the Attorney General to "collect DNA samples from individuals who are arrested, facing charges, or convicted"). Indeed, the decision below has direct effects beyond Maryland: Because the DNA samples Maryland collects may otherwise be eligible for the FBI's national DNA database, the decision renders the database less effective for other States and the Federal Government. These factors make it reasonably probable that the Court will grant certiorari to resolve the split on the question presented. In addition, given the considered analysis of courts on the other side of the split, there is a fair prospect that this Court will reverse the decision below.

Finally, the decision below subjects Maryland to ongoing irreparable harm. "[A]ny time a State is enjoined by a

court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co.*, 434 U. S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Here there is, in addition, an ongoing and concrete harm to Maryland's law enforcement and public safety interests. According to Maryland, from 2009—the year Maryland began collecting samples from arrestees—to 2011, "matches from arrestee swabs [from Maryland] have resulted in 58 criminal prosecutions." Application 16. Collecting DNA from individuals arrested for violent felonies provides a valuable tool for investigating unsolved crimes and thereby helping to remove violent offenders from the general population. Crimes for which DNA evidence is implicated tend to be serious, and serious crimes cause serious injuries. That Maryland may not employ a duly-enacted statute to help prevent these injuries constitutes irreparable harm.

King responds that Maryland's eight-week delay in applying for a stay undermines its allegation of irreparable harm. In addition, he points out that of the 10,666 samples Maryland seized last year, only 4,327 of them were eligible for entry into the federal database and only 19 led to an arrest (of which fewer than half led to a conviction). Memorandum in Opposition 11. These are sound points. Nonetheless, in the absence of a stay, Maryland would be disabled from employing a valuable law enforcement tool for several months—a tool used widely throughout the country and one that has been upheld by two Courts of Appeals and another state high court.

Accordingly, the judgment and mandate below are hereby stayed pending the disposition of the petition for a writ of certiorari. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the issuance of the mandate

of this Court.

*It is so ordered.*