JAMES E. GRAVES, JR., Circuit Judge,
dissenting:
I dissent from the majority’s decision granting the motion to stay. I would deny the motion in its entirety.
I
The majority’s stated goal is preservation of the status quo because “we face impending elections.” I agree that preserving the status quo is “an important consideration in granting a stay.” Barber v. Bryant, 833 F.3d 510, 511 (5th Cir. 2016) (quoting Dayton Bd. of Educ. v. Brinkman, 439 U.S. 1358, 1359, 99 S.Ct. 28, 58 L.Ed.2d 67 (1978)). But the stay that the majority imposes does not meet.its goal.
Status quo ante means “[t]he situation that existed before something else (being discussed) occurred.” Status Quo Ante, Black’s Law Dictionary (10th ed. 2014). The “something else (being discussed)”' in this appeal is actually two things: the district court’s final order and the pending implementation of S.B. 5, which is set to take effect On January 1, 2018.
If the status quo ante is defined by what was, then it .certainly, cannot be defined by what has never been, i.e., S.B. 5. The status quo ante cannot truly be preserved unless the implementation of S.B. 5. is stayed until this court has had a chance to review the merits of the district- court’s ruling on -that iteration of Texas’s voter ID law. See Whole Woman’s Health v. Lakey, 769 F.3d 285, 308 (5th Cir.) (Higginson, J,, concurring in part and dissenting in part) (emphasizing the importance of “pre-serv[ing] th[e] status quo pending our court’s'ultimate decision on the correctness of the district court’s ruling” in consideration of motion to stay pending appeal), stay vacated in part, — U.S. -, 135 S.Ct 399, 190 L.Ed.2d 247 (2014).
The relevant status quo ante should be defined as only the continued use of the parties’ agreed-upon interim remedy (the Declaration of Reasonable Impediment) that was implemented in advance of the 2016 presidential election and remained in effect until the district court’s August 23rd order—which is now being stayed. Con *393 structing the stay in this manner-would maintain the status quo -ante in Texas as it existed ante the district court’s order and ante the Legislature’s passage and implementation of S.B. 5. See Barber, 833 F.3d at 512, Neither side would be irreparably harmed by continuing to operate under the same election procedures they have been operating under for more than a year.
If a stay is granted at all, then it should be comprehensive. In other words, the correct approach would be to stay both the district court’s order and the new legislation.
II
Turning now to the substance of the State’s motion, four factors govern consideration: (1) whether the State has made a strong showing that it is likely to succeed on the merits; (2) whether the State will be irreparably injured absent a stay; (3) the balance of hardships; and (4) where the public interest lies. Nken v. Holder, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). In my view, the State has failed to satisfy any of these factors.
First, the State has .not made a sufficiently strong showing that it is likely to succeed on the merits. The Fourth Circuit’s decision in North Carolina State Conference of NAACP v. McCrory, 831 F.3d 204 (4th Cir. 2016), cert. denied, — U.S. -, 137 S.Ct. 1399, 198 L.Ed.2d 220 (2017), is instructive. There, the court invalidated North Carolina’s voter ID law after finding that the North Carolina legislature unconstitutionally enacted the law with a racially discriminatory intent. The legislature later amended one of the law’s provisions to add a reasonable impediment exception. The court refused to consider this amendment and enjoined the entire law because of the law’s underlying discriminatory purpose:
[Ejven if the State were able to demonstrate that -the amendment lessens the discriminatory effect of the photo ID requirement, it would not relieve us of our obligation to grant a complete remedy in this case. That remedy must reflect our finding that the challenged provisions were motivated by an impermissible discriminatory intent and must ensure that those-provisions do not impose any lingering burden on African 'American voters....
While remedies short of invalidation may be appropriate if a provision violates the Voting Rights Act oníy because ' of its discriminatory effect, laws passed with discriminatory intent inflict a broader injury and cannot stand.
Id. at 240 (citing Veasey v. Abbott, 830 F.3d 216, 268 & n.66 (5th. Cir. 2016) (en banc), cert. denied, — U.S. -, 137 S.Ct. 612, 197 L.Ed.2d 78 (2017)). In other words, because the North Carolina voter ID law was passed with a discriminatory intent, it had to be “eliminated root and branch,” and the proposed remediation was squashed. Green v. Cty. Sch. Bd., 391 U.S. 430, 438, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). In light of the Fourth Circuit’s decision, and considering the similarity of the circumstances underlying the decision and those we face here vis-à-vis S.B. 14 and S.B. 5, I am unconvinced that the State is likely to succeed on the merits.
Second, the State has not shown that' it will suffer an irreparable injury in the absence of a stay. Both the State and the majority rely on Maryland v. King, 567 U.S. 1301, 133 S.Ct. 1, 183 L.Ed.2d 667 (2012) (Roberts, C.J., in chambers),' in which Chief Justice Roberts, in his capacity as Circuit Justice, explained that - “any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, -it suffers a form of irreparable injury.” Id. at 3 (quoting New *394 Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers)). King is distinguishable. There, the applicants sought to stay a judgment that would have enjoined a Maryland law regarding the collection of defendants’ DNA prior to being convicted. Chief Justice Roberts noted that, in the absence of a stay, Maryland would suffer “an ongoing and concrete harm to [its] law enforcement and public safety interests.” Id. There are no such additional interests at play here. The State argues that a stay would cause it irreparable harm by, in essence, preventing it from enforcing a law that this court has already found at a minimum has a discriminatory effect on African American and Latino voters, see Veasey, 830 F.3d at 264-65, and that the district court has found was enacted with a discriminatory purpose, see Veasey v. Abbott, — S.W.3d -, 2017 WL 1315593 (S.D. Tex. Apr. 10, 2017). It cannot be that the single statement from King has the result that a state automatically suffers an irreparable injury when a court blocks any law it has enacted—regardless of the content of the law or the circumstances of its passing. Indeed, because these laws affect—or threaten to affect—the plaintiffs’ right to vote, it is the plaintiffs who have shown they will suffer an irreparable injury should the stay be implemented. See Mich. State A. Philip Randolph Inst. v. Johnson, 833 F.3d 656, 669 (6th Cir. 2016) (“When constitutional rights are threatened or impaired, irreparable injury is presumed. A restriction on the fundamental right to vote therefore constitutes irreparable injury.” (citation omitted)).
And finally, the State has not shown that either the balance of hardships or the public interest weighs in its favor. Because the state government of Texas is a litigant in this case, these factors are considered in tandem. See Nken, 556 U.S. at 435, 129 S.Ct. 1749. The State is correct that the “presumption of constitutionality which attaches to” a state’s law is “an equity to be considered in favor of applicants in balancing hardships.” Walters v. Nat’l Ass’n of Radiation Survivors, 468 U.S. 1323, 1324, 105 S.Ct. 11, 82 L.Ed.2d 908 (1984) (Rehnquist, J., in chambers). But this statement, like the statement in King, does not provide the State an automatic check in its column under balance of hardships. Any hardship purportedly suffered by a state is significantly lessened when that state passes and seeks to enforce a law that impermissibly impinges on “one of the most fundamental rights of our citizens: the right to vote,” Nw. Aus. Mun. Util. Dist. No. 1 v. Holder, 557 U.S. 193, 202, 129 S.Ct. 2504, 174 L.Ed.2d 140 (2009) (quoting Bartlett v. Strickland, 556 U.S. 1, 10, 129 S.Ct. 1231, 173 L.Ed.2d 173 (2009) (plurality op.)), the protection of which is unequivocally in the public interest. See Charles H. Wesley Educ. Found., Inc. v. Cox, 408 F.3d 1349, 1355 (11th Cir. 2005) (“[T]he injunction’s cautious protection of the [Appellants]’ franchise-related rights is without question in the public interest.”); cf. Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013) (“[I]t is always in the public interest to prevent the violation of a party’s constitutional rights.” (quoting Awad v. Ziriax, 670 F.3d 1111, 1131-32 (10th Cir. 2012))), aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc., — U.S. -, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014).
[[Image here]]
For the foregoing reasons, the motion to stay should be denied. Because the majority has decided otherwise, I respectfully dissent.