# SUPREME COURT OF THE UNITED STATES

No. 20A111

ALEX FRANCOIS *v.* ROBERT M. WILKINSON, ACTING ATTORNEY GENERAL

ON APPLICATION FOR STAY OF REMOVAL

[January 22, 2021]

The application for stay of removal presented to JUSTICE ALITO and by him referred to the Court is denied.

JUSTICE SOTOMAYOR, dissenting from the denial of application for stay.

Alex Francois is a 61-year-old Haitian national who came to the United States unlawfully when he was 19 and has lived here ever since. Francois suffers from severe mental illness, including schizophrenia, bipolar disorder, and psychosis. He presents compelling evidence that, if he is removed to Haiti, he will be targeted for cruel and dehumanizing mistreatment because of his mental illness. An Immigration Judge (IJ) therefore granted Francois withholding of removal in 2019, guaranteeing that he would not be sent to Haiti. That should have been the end of this case.

Instead, Francois now faces imminent removal to Haiti. Rather than deferring to the IJ's factual findings, as the law requires, the Board of Immigration Appeals (BIA) ignored them and remanded the case back to the IJ for further factfinding. On remand, the IJ reviewed the very same evidentiary record on which it had previously relied to grant Francois relief. This time, however, the IJ denied Francois withholding of removal, contradicting not only its prior decision but also key evidence that the IJ claimed to be crediting. The BIA dismissed Francois' appeal.

Francois is currently seeking review of the BIA's decision

before the Court of Appeals for the Fifth Circuit. The Government, however, plans to remove Francois before he can even submit his opening brief. This is exactly the kind of circumstance that calls for a temporary stay of removal. Francois is likely to prevail on appeal; he will suffer irreparable harm absent a stay; and the public interest strongly favors protecting Francois from wrongful removal and the terrible suffering awaiting him in Haiti. Yet, without explanation, the Fifth Circuit denied a stay. Today, this Court does the same. I dissent.

## I

Francois came to the United States in 1979 to reunite with his father, a Haitian exile who became an American citizen. Francois spent much of his life in New York City, where he worked in construction and raised a family, including six children. Two of his children went on to serve in the U. S. Army, including one who deployed to Afghanistan.

According to his father, Francois' struggles with mental illness began in his midforties. He experienced delusions, irritability, and aggression, and as his condition deteriorated, he engaged in unusual behavior such as eating grass and drinking his own urine. Francois also developed a lengthy criminal history, which appears to stem from the effects of his illnesses. He has been hospitalized numerous times, and he is currently being treated with psychotropic medication.

In 2018, the Government sought to have Francois declared removable from the United States because he was not lawfully admitted. The IJ sustained the charge of removability. But the IJ also deemed Francois mentally incompetent and allowed his attorney to apply for withholding of removal on his behalf. Withholding of removal prevents the Government from removing a noncitizen to a

country where it is more likely than not that the noncitizen's "life or freedom would be threatened" on account of a protected ground. 8 U. S. C. §1231(b)(3)(A). There is no dispute in this case that Francois' mental illness is one such protected ground. See App. A to Application for Stay (IJ Decision, p. 5, n. 2).

To prove a likelihood of persecution, Francois submitted an expert declaration explaining that mental illness is poorly understood and stigmatized in Haiti. "[B]izarre, erratic and non-compliant behavior is often responded to with extreme physical punishment, torture, and isolation," including locking the mentally ill in "crawlspaces or other tiny spaces." App. K to Application for Stay 10. The IJ placed "great evidentiary weight" on the expert's assessment, concluding that Francois more likely than not will be persecuted on account of his mental illness if removed to Haiti. App. A to Application for Stay (IJ Decision, at 5, n. 3). Specifically, as a deportee with a criminal record, Francois will face detention in an "overcrowded, disease-infested" prison "lacking in basic necessities such as plumbing and electricity." *Id.,* at 5. Because of his mental illness, Francois' suffering will be "made worse" "due to lack of access to medication or treatment and extreme repressive measures such as physical punishment, torture and isolation." *Ibid.* Even if Francois is not detained, his symptoms will more likely than not "attract the attention of Haitian authorities or private actors" whom the Haitian Government is unwilling or unable to control, "who will persecute him on account of" his mental illness. *Id.,* at 6. Accordingly, the IJ granted Francois withholding of removal.

The Government appealed to the BIA, arguing that the IJ "erred in finding" that Francois will likely be persecuted on account of his mental illness. App. B to Application for Stay 3. The BIA may not, however, "engage in *de novo* review of findings of fact determined by an immigration judge." 8 CFR §1003.1(d)(3)(i) (2020). Instead, the BIA may

review such findings "only to determine whether the findings of the immigration judge are clearly erroneous." *Ibid.* Under that standard, even if the BIA would interpret the evidentiary record differently, the BIA was required to defer to the IJ's view of the evidence as long as it was "plausible." *Anderson* v. *Bessemer City*, 470 U. S. 564, 574 (1985).

Rather than attempting to find clear error, the BIA sidestepped the standard of review by implausibly concluding that the IJ had failed entirely to make certain critical factual findings. The BIA remanded with instructions for the IJ to determine "whether [Francois] will be singled out individually for persecution," what "harm [Francois] is likely to suffer in Haiti," and "whether such harm would be on account of his membership in his proposed particular social group" (*i.e.,* the severely mentally ill). App. B to Application for Stay 2.

In reality, the IJ had already repeatedly concluded that Francois "will more likely than not be persecuted on account of" his mental illness, including through "physical punishment, torture and isolation." App. A to Application for Stay (IJ Decision, at 5–6, and n. 3). The IJ thus recognized the BIA's order for what it was: an instruction to change those findings. "Reviewing the evidentiary record again, in light of the Board's decision," the IJ concluded that Francois would not likely be persecuted on account of his mental illness. App. C to Application for Stay (IJ Decision on Remand, at 4). The IJ admitted no additional evidence to justify its 180-degree turn; it simply recharacterized the old evidence. To take just one example, the IJ claimed on remand that Francois' expert "opine[d] that future persecution on account of [Francois'] mental health issue is possible, while stopping short of saying that it is probable." *Id.*, at 6. In fact, as the IJ recognized in its first decision, the expert clearly found that "it is very likely that Mr. Francois will suffer serious and irreparable harm amounting to tor-

ture if deported to Haiti," and that "both his criminal deportee status and mental illness are likely to result in violence." App. K to Application for Stay 30–31.

Francois appealed to the BIA. The BIA acknowledged "extensive evidence in the record of the mistreatment of the mentally ill [in Haiti,] particularly when detained or hospitalized." App. D to Application for Stay 4. It also noted the expert's use of phrases like "'often,'" "'routinely,'" and "'more likely'" to describe the probability of harm to the mentally ill. *Id.,* at 2–3. But this time, the BIA concluded that it was bound by the clear-error standard to respect the IJ's findings and dismissed Francois' appeal.

On December 1, 2020, Francois filed a petition for review with the Fifth Circuit. On December 16, the Government notified Francois that he would be removed to Haiti on December 22, just six days later. Francois requested a stay of removal from the Fifth Circuit so that he could complete his appeal. Without explanation, the Fifth Circuit denied a stay. App. I to Application for Stay. It then set a briefing schedule beginning in February 2021.

Francois now seeks a stay of removal from this Court.

## II

"It takes time to decide a case on appeal," and "if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Nken* v. *Holder*, 556 U. S. 418, 421 (2009). This is such a case. If Francois is removed to Haiti as the Government intends, he will suffer extreme harm before any federal court has had an opportunity to address his claims for relief.

Courts have an important tool for addressing such a situation: the power to issue a temporary stay. A stay "allows an appellate court to act responsibly," preventing the need for "justice on the fly" or, worse, the denial of justice altogether. *Id.,* at 427. The decision to issue a stay is guided by four factors: "'(1) whether the stay applicant has made a

strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.,* at 434.  The first two factors "are the most critical." *Ibid.*

Under this standard, Francois is plainly entitled to a stay.  Most importantly, he has shown a strong likelihood that his appeal will succeed on the merits.  As the IJ originally recognized, the record clearly proves that Francois more likely than not will be persecuted on account of his mental illness if removed to Haiti.  In its first decision remanding the case, the BIA abused its discretion by ignoring the IJ's findings.  See, *e.g., Vitug* v. *Holder*, 723 F. 3d 1056, 1064 (CA9 2013) (finding an abuse of discretion where "the BIA ignored factual findings of the IJ that were key to the IJ's holding").  Exacerbating the BIA's error, the IJ on remand issued a decision that is entirely unsupported by the record.  The expert, whom the IJ credited, was clear: Francois "will be specifically targeted for violence by prison and police officials, over and above the usual harsh treatment of Haitian criminal deportees, when—as his psychiatric records show—he exhibits symptoms of his mental conditions that will be disturbing and disruptive."  App. K to Application for Stay 31.

For the same reasons, Francois has shown that he will suffer irreparable harm absent a stay.  As the BIA acknowledged, if removed to Haiti, Francois "will not receive the treatment he needs for his mental illness," and he "will be detained" in "deplorable" conditions where "extreme repressive measures are used against detainees."  App. D to Application for Stay 1.  As his mental condition deteriorates, he will fall prey to the very persecution that entitles him to relief on appeal.

Finally, the public interest weighs heavily in Francois' fa-

vor. The public has a strong interest in preventing nonciti-zens from being wrongfully removed, "particularly to coun-tries where they are likely to face substantial harm." *Nken*, 556 U. S., at 436; see also *Yusupov* v. *Attorney Gen. of U. S.*, 650 F. 3d 968, 977 (CA3 2011) (explaining that withholding of removal effectuates the United States' treaty commit-ment to protect refugees). That interest is heightened be-cause Francois is currently receiving medical treatment and is supported here by his family. The Government has offered no compelling reason that Francois should be robbed of these critical lifelines before he has had a chance to be heard in court.

In light of the foregoing, the Fifth Circuit's decision to deny a stay was an abuse of its discretion. See *Dada* v. *Mukasey*, 554 U. S. 1, 21 (2008) (noting that it "may consti-tute an abuse of discretion" to deny a stay where a nonciti-zen "states nonfrivolous grounds" for relief ). Today, this Court compounds the Fifth Circuit's error by refusing to provide the temporary relief necessary to allow Francois' appeal to be heard.[*]

——————

[*] One difference between the factors in *Nken* v. *Holder*, 556 U. S. 418 (2009), and this Court's traditional stay criteria is this Court's consider-ation of whether a case raises significant issues that merit plenary re-view (sometimes called "cert-worthiness"). See *Maryland* v. *King*, 567 U. S. 1301, 1302 (2012) (ROBERTS, C. J., in chambers). This inquiry is complicated in cases such as this one where there is not yet a decision by the court of appeals, which often informs whether a case presents sub-stantial questions of law. Even in limited emergency briefing, Francois identifies several issues that the Fifth Circuit may address, including the adequacy of procedural safeguards for mentally incompetent noncitizens in removal proceedings and the due process concerns created by the BIA's remand. In addition, this Court does, on occasion, intervene in cases to correct obvious errors made below. See, *e.g., Salazar-Limon* v. *Houston*, 581 U. S. ___, ___–___ (2017) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 8–9) (citing cases). This Court has stepped in, for instance, when it believed important factual findings were "overlooked." See *Wetzel* v. *Lambert*, 565 U. S. 520, 524 (2012) (*per curiam*). A stay is not a conclusive determination that this Court will grant certiorari. It

That leaves only the Government itself to avert this unnecessary tragedy.  The Government has long exercised its discretion to halt removal temporarily, either through an administrative stay or deferred action.    See 8 CFR §241.6(a); *Department of Homeland Security* v. *Regents of Univ. of Cal.,* 591 U. S. ___, ___ (2020) (slip op., at 3).  That discretion is warranted here.  As his father wrote in a letter to the IJ, Francois is "at his weakest and at his lowest" point.  App. N to Application for Stay 20.  For now, all he asks is the small grace, to which he is legally entitled, of being allowed to remain in the country while he pursues his substantial claims for relief.  Because I would grant him that opportunity, I dissent.

―――――――
simply gives this Court time to consider these issues.