# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2022

Lyle W. Cayce
Clerk

No. 22-50536

Vote.Org,

*Plaintiff—Appellee*,

*versus*

Jacquelyn Callanen, Et al.

*Defendants*,

*versus*

Ken Paxton, In His Official Capacity as the Attorney General of Texas; Lupe C. Torres, In His Official Capacity as the Medina County Elections Administrator; Terrie Pendley, In Her Official Capacity as the Real County Tax Assessor-Collector,

*Intervenor Defendants—Appellants.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-649

Before Jones, Duncan, and Engelhardt, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

No. 22-50536

Vote.org sued several county election administrators seeking to enjoin enforcement of a recently enacted Texas Election Code provision that, in practice, makes useless the web application it developed to allow Texas voters to register electronically. The district court granted a permanent injunction, concluding that Vote.org adequately showed that the provision violates both the Civil Rights Act and the Constitution. The defendants seek a stay pending appeal from this court. We conclude that the defendants have met their burden for such extraordinary relief and exercise our discretion to GRANT a stay pending appeal.

## I.

In virtually every state, those eligible to vote must register before casting a ballot. To register in Texas, applicants need only "submit an application to the registrar of the county in which the [applicant] resides." Tex. Elec. Code § 13.002(a). That application "must be in writing and signed by the applicant." Tex. Elec. Code § 13.002(b).

Applicants have several ways to "submit" their application to the county registrar. Most straightforwardly, an applicant may submit the application directly to the county registrar by personal delivery or mail. Tex. Elec. Code § 13.002(a). Texas also designates as certain governmental offices, such as the Department of Public Safety and public libraries, as "voter registration agencies" and requires them to accept and deliver completed applications to the county registrar. Tex. Elec. Code §§ 20.001, 20.035. Further, counties may appoint volunteer "deputy registrars" to distribute and accept applications on the county registrar's behalf. Tex. Elec. Code §§ 13.038, 13.041. If an applicant submits an incomplete voter registration application, then the county registrar will notify the applicant and allow ten days to cure the deficiency. Tex. Elec. Code § 13.073.

No. 22-50536

In 2013, the Texas Legislature passed, and the Governor signed, legislation that expanded an applicant's options for submitting a voter registration application. The legislation allowed an applicant to transmit a registration form to the county registrar via fax, so long as they delivered or mailed a hardcopy of the application to the registrar within four days of the fax transmission. 2013 Tex. Sess. Law Serv. 1178. The application is considered submitted to the registrar "on the date the [fax] transmission is received . . . ." *Id.* The requirement that an applicant submit a copy of by personal delivery or mail within four days was codified at Tex. Elec. Code § 13.143(d-2).

Vote.org is a non-profit, non-membership organization that seeks to simplify and streamline political engagement by, for example, facilitating voter registration. In 2018, Vote.org launched a web application that purported to allow a person to complete a voter registration application digitally. A user need only supply the required information and an electronic image of her signature and the web application would assemble a completed voter registration application. The web application would then transmit the completed form to a third-party fax vendor, who would transmit the form via fax to the county registrar, and another third-party vendor, who would mail a hardcopy of the application to the county registrar.

During the 2018 election cycle, Vote.org piloted its web application in Bexar, Travis, Cameron, and Dallas counties. Other counties rejected its invitation to participate. The pilot program was an unmitigated disaster. Because of its poor design, many of the voter registration applications assembled using the web application contained signature lines that were blank, blacked out, illegible, or otherwise unacceptable. Moreover, the web application failed to fax many of the voter registration applications to the relevant registrar's office.

No. 22-50536

After encountering difficulties with the pilot program, the Cameron County Elections Administrator sought the Secretary of State's guidance on whether Vote.org's web application complied with the Texas Election Code. Because applications submitted using the web application lacked an original, "wet" signature, the Secretary of State's office advised that those applications were incomplete. Consequently, any applicant who submitted a voter registration application using Vote.org's web application needed to be notified and given an opportunity to cure the deficiency in accordance with Tex. Elec. Code § 13.073. The Secretary of State later issued a public statement to the same effect. Vote.org notified users of its web application that their applications would not be processed unless they cured the signature defect.[1] Vote.org stated that it was "truly, deeply, sorry for [the] inconvenience."

Several years later, during the 2021 Legislative session, Texas passed House Bill 3107, which clarified several provisions in the Election Code. 2021 Tex. Sess. Law Serv. 1469. Critically, the bill amended Tex. Elec. Code § 13.143(d-2) to specify that for "a registration application submitted by [fax] to be effective, a copy of the original registration application containing the voter's original signature must be submitted by personal delivery or mail" within four days. *Id.*

Vote.org then brought this lawsuit under 42 U.S.C. § 1983 against four county election officials seeking to enjoin § 13.143(d-2)'s wet signature requirement. Specifically, Vote.org argues that the wet signature

---

[1] Several groups sued the Secretary of State, arguing that requiring a wet signature on a voter registration application violates the Constitution and § 1971 of the Civil Rights Act. *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 876 (5th Cir. 2021) (per curiam). This court dismissed that lawsuit, concluding that the Secretary of State is an improper defendant under *Ex parte Young*.

requirement violates § 1971 of the Civil Rights Act of 1964, codified at 52 U.S.C. § 10101(a)(2)(B), because it is immaterial to an individual's qualification to vote. Vote.org also contends that the wet signature requirement unduly burdens the right to vote in violation of the First and Fourteenth Amendments. Attorney General Paxton and others intervened to defend § 13.143(d-2)'s constitutionality. After extensive discovery, the defendants and Vote.org filed competing motions for summary judgment.

The district court denied the defendants' motion and granted Vote.org's. Echoing an earlier ruling on a motion to dismiss for lack of jurisdiction, the district court held that Vote.org had organizational and statutory standing. As to the merits, the district court concluded that the wet signature requirement violates § 1971 because an original, wet signature is "not material" to an individual's qualification to vote. Whether a registration form mailed to the county registrar's office after being faxed contains a wet signature, the district court noted, is distinct from the material requirement that the form be "signed by the applicant." Furthermore, the district court reasoned, Vote.org showed that the county registrars do not use the wet signatures for any purpose, only electronically stored versions of the signatures, and Texas law does not enumerate a wet signature as one of the qualifications for voter registration. The district court also held that the wet signature requirement violates the First and Fourteenth Amendments. Importantly, the district court concluded as a threshold matter that the wet signature rule implicates the right to vote. Then, the district court weighed "the character and magnitude of the asserted injury" to the right to vote against "the precise interests put forward by the State" and concluded that there was "no valid justification" for the burden. Ultimately, the district court granted a permanent injunction.

The defendants sought a stay pending appeal, which the district court denied. The defendants now seek the same relief from this court. Based on

No. 22-50536

the standard and reasons articulated below, we conclude the defendants have met their burden and are entitled to a stay pending appeal.

## II.

To determine if a party is entitled to a stay pending appeal, this court considers "(1) whether the applicant has made a strong showing of likelihood to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of a stay will substantially injure other interested parties; and (4) where the public interest lies." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009)).  Addressing first the defendants' likelihood of success on the merits and then the other stay factors, we conclude that the defendants have met their burden.  We therefore exercise our discretion in granting a stay pending appeal.

## A.

The defendants contend that they are likely to succeed on the merits for three reasons: Vote.org lacks standing; the wet signature requirement (a) does not deny anyone the right to vote and (b) is material to determining whether an individual is qualified to vote; and the wet signature requirement does not burden the right to vote and, even if it does, that burden is minimal and outweighed by the State's interests.  We address each argument in turn.

### i.

First, the defendants contend that Vote.org lacks standing.  Article III specifies that the judicial power of the United States extends only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Standing doctrine implements the case-or-controversy requirement by insisting that the plaintiff "prove that he has suffered a concrete and particularized [injury in fact] that is fairly traceable to the challenged conduct, and is likely to be

6

redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S. Ct. 2652, 2661 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)). An organization suing on its own behalf, as Vote.org is here, must satisfy the same standard.[2] *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010).

Even assuming that Vote.org has shown organizational injury from the diversion of resources, the defendants argue that Vote.org lacks third-party standing. Vote.org's lawsuit, the defendants assert, does not seek to vindicate its own rights, only the rights of Texans not before this court. The defendants are, without question, correct that Vote.org invokes the rights of Texas voters and not its own—an organization plainly lacks the right to vote. A party must ordinarily assert only "his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975). The Supreme Court crafted a prudential exception to the traditional rule against third-party standing where "the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*

---

[2] Organizations can satisfy the standing requirement under two theories, "appropriately called 'associational standing' and 'organizational standing.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). Organizational standing requires the organization to establish its own standing premised on a cognizable Article III injury to the organization itself. *Id.* By contrast, associational standing "is derivative of the standing of the [organization's] members, requiring that they have standing and that the interests the [organization] seeks to protect be germane to its purpose." *Id.* Here, Vote.org asserts only the former theory. (Because it is a non-membership organization, Vote.org cannot contend that it has associational standing.) We are dubious whether Vote.org can show an injury sufficient to claim organizational standing in light of, e.g., *El Paso Cnty. v. Trump*, 982 F.3d 332, 344-45 (5th Cir. 2020); *City of Kyle,* 626 F.3d 328-29. We are also dubious that its claims satisfy the traceability and redressability prongs of organizational standing, but we leave these issues to the merits panel.

*v. Tesmer*, 543 U.S. 125, 130, 125 S. Ct. 564, 567 (2004) (citing *Powers v. Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 1370-71 (1991)).  Otherwise, the Supreme Court has "not looked favorably upon third-party standing." *Id.*

Vote.org asserts that it fits within the prudential exception to the rule against third-party standing.  It posits that it has a close relationship with some unknown subset of Texas voters that may in the future submit their voter registration applications via fax using the Vote.org web application because their right to submit those applications free from the burden imposed by the wet signature requirement is inextricable from Vote.org's platform.  Furthermore, Vote.org hypothesizes that individual voters injured by the wet signature requirement are hindered by financial constraints and justiciability problems in protecting their own rights.  We disagree.  Vote.org's relationship with prospective users is no closer than the hypothetical attorney-client relationship rejected as insufficiently close to support third-party standing in *Kowalski*.  543 U.S. at 130-31, 125 S. Ct. at 568 (concluding that a "future attorney-client relationship with as yet unascertained" criminal defendants is not only not a close relationship but "no relationship at all").  Indeed, Vote.org's CEO explained that the organization does not "assist people in registering to vote," instead it designed technology that allows users to "register themselves to vote."  Moreover, there is little doubt that voters injured by the wet signature requirement could protect their rights—voters and associations representing those voters bring such lawsuits all the time.  *See, e.g.*, *Tex. Democratic Party v. Hughs*, 860 F. App'x 874 (5th Cir. 2021) (lawsuit brought by same group of attorneys challenging wet signature requirement on behalf of associations with eligible voter members).  If Vote.org cannot prove that it meets the requirements for third-party standing, as seems probable, then the defendants must prevail.

The defendants alternatively contend that even if Vote.org could fit within the exception to the general prohibition on third-party standing,

§ 1983 contains no exception that allows a plaintiff to invoke a third-party's rights and therefore Vote.org lacks statutory standing for want of an arguable cause of action. Statutory standing turns on "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-128 n.4, 134 S. Ct. 1377, 1387, 1387 n.4 (2014). Section 1983, the defendants point out, specifies that state actors who subject a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable *to the party injured* . . . ." 42 U.S.C. § 1983 (emphasis added). Thus, the defendants emphasize, the text seemingly precludes an action premised on the deprivation of another's rights. And here there is little doubt that Vote.org's lawsuit is derivative in that sense: The substantive claims both hinge on allegations that the wet signature requirement unlawfully infringes Texans' right to vote.

Vote.org retorts that the defendants' position is contradicted by the weight of precedent. Less clear is what precedent. Of the cases Vote.org cites, some involve organizations bringing § 1983 claims but, with two exceptions, none appear to involve an organization suing only on its own behalf based on injuries to a third parties.[3] The two cases where courts allowed an organization to sue under § 1983 based on the infringement of another's rights did so without discussing the issue. *See Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011); *Common Cause v. Thomsen*, No. 19-cv-323,

---

[3] *See, e.g.*, *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 553 (5th Cir. 2010) (concluding that association "was entitled to claim associational standing on behalf of its members . . . ."); *Anderson v. Ghaly*, No. 15-cv-5120, 2022 WL 717842, at *6 (N.D. Cal. Mar. 10, 2022) (holding that organizations alleged facts sufficient for both associational and organizational standing); *Tex. Democratic Party v. Hughs*, 474 F.Supp.3d 849, 855-857 (W.D. Tex. 2020) (same), *rev'd on other grounds* 860 F.App'x 874 (5th Cir. 2021); *Mercado Azteca, L.L.C. v. City of Dallas*, No. 3:03-cv-1145, 2004 WL 2058791, at *6 (N.D. Tex. Sept. 14, 2004) (claim involving cognizable discrimination harm to entity).

No. 22-50536

2021 WL 5833971 (W.D. Wis. Dec. 9, 2021).  The defendants' textual argument is powerful and Vote.org's response weak.[4]  Without an arguable cause of action, Vote.org lacks statutory standing and the defendants appear poised for merits success on this basis too.

**ii.**

Second, the defendants argue that Vote.org is unlikely to prevail on its § 1971 claim because (1) no voter is deprived of the opportunity to vote by virtue of the wet signature requirement and (2) the wet signature requirement is material to determining whether an individual is qualified to vote.[5]  Section 1971 provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper related to any application,

---

[4] What is more, this court's precedents may preclude § 1983 actions premised on injuries to third parties. *Shaw v. Garrison*, 545 F.2d 980, 983 n.4 (5th Cir. 1977) (noting that this is "not an attempt to sue under the civil rights statutes for deprivation of another's constitutional rights" and that "[s]uch suits are impermissible."), *rev'd on other grounds*, 436 U.S. 584, 98 S. Ct. 1991 (1978); *but see Church of Scientology v. Cazares*, 638 F.2d 1272, 1276-80 (5th Cir. 1981) (allowing organization to pursue § 1983 claim based on injuries to organization's members without substantive discussion).

[5] The defendants additionally assert that § 1971 does not create an implied cause of action or a private right enforceable in a § 1983 suit.  Courts are divided on this point. *Compare Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022) (concluding that § 1971 does secure a private right enforceable under § 1983), *and Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) (same), *with McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000) (holding otherwise).  Of course, even if § 1971 provides an enforceable private right to individuals that does not mean Vote.org may invoke that right. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (2002) (noting that part of the inquiry to determine if a statute grants a right enforceable under § 1983 is "whether or not a statute 'confer[s] rights on a *particular class of persons*.'" (emphasis added, quoting *California v. Sierra Club*, 451 U.S. 287, 294, 101 S. Ct. 1775, 1779 (1981))).  Because we need not resolve this issue to grant the defendants' motion for a stay pending appeal, we leave it for the merits panel to consider in the first instance.

registration, or other act requisite to voting, if such error or omission in not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

The defendants contend that enforcement of the wet signature rule does not result in anyone being deprived of the right to vote because the Texas Election Code confers a right to cure and allows other means of registration.[6] Under the wet signature rule, an application submitted via fax and mailed without a wet signature is incomplete and must be rejected. Tex. Elec. Code § 13.073 requires the county registrar to notify any applicant whose voter registration application is rejected, explain the reason for the rejection, and allow the applicant ten days to cure the defect. And an applicant has many other means of registering, by mail or personal delivery, for instance. Texas Elec. Code § 13.002(a). Vote.org argues that the opportunity to cure is beside the point because if the applicant who desires to submit her application via fax does not eventually comply with a wet signature requirement, then the voter will not be registered and, consequently, will not be able to vote. But under Vote.org's theory an individual's failure to comply with *any* registration requirement would deprive that person of the right to vote. That proves too much. Voters that submit their applications via fax and mistakenly mail a copy without a wet

---

[6] A plausible argument can be made that § 1971 is tied to only voter registration specifically and not to all acts that constitute casting a ballot. For example, if a voter goes "to the polling place on the wrong day or after the polls have closed," is that voter denied the right to vote under § 1971? *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting from denial of application for stay). It cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under § 1971. Otherwise, virtually every rule governing how citizens vote would is suspect. "Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right." *Id.*

signature are given a second bite at the apple. Indeed, the county registrar is *required* to notify the applicant in short order and allow ten days to cure. What is more, no applicant *must* comply with the wet signature requirement—there are plenty of alternative means to register. Thus, it is hard to conceive how the wet signature rule deprives anyone of the right to vote.

Next, the defendants argue that the wet signature requirement is material in determining whether an individual is qualified to vote. To be qualified to vote in Texas, an individual must, among other things, be "a registered voter." Tex. Elec. Code § 11.002(a)(6). And to register to vote in Texas an individual must submit a written and signed "application to the registrar of the county in which the [individual] resides . . . by personal delivery, by mail, or by [fax] in accordance with Sections 13.143(d) and (d-2)." Tex. Elec Code § 13.002(a)-(b). Section 13.143(d-2), in turn, requires that a voter registration application submitted via fax be subsequently mailed with the applicant's original, i.e. wet, signature. Tex. Elec. Code § 13.143(d-2). Texas's approved voter registration application displays the State's voting requirements immediately above the signature box and also that giving false information to procure a voter registration is criminal perjury. Requiring a wet signature on a voter registration application submitted via fax, the defendants emphasize, therefore ensures that an applicant has read, understood, and attested that he meets the qualifications for voting. Thus, the defendants conclude, not only is the wet signature requirement material in the sense that it is one of the ways an individual becomes qualified to vote but it is also material in the sense that it deters fraud, as I explain in the next section.

Vote.org contests the wet signature rule's materiality by pointing out that several election administrators admitted in depositions that the rule serves no purpose related to determining an applicant's qualifications to

vote.    Indeed, Vote.org stresses, county registrars accept any voter registration application with a wet signature without comparing or otherwise inspecting the signature other than to ensure the signature is present. Vote.org does not, however, contest the materiality of Tex. Elec. Code § 13.002(b)'s general requirement that an application "must be in writing and signed by the applicant."

It seems to us that Vote.org's position is logically inconsistent.  For one, it is unclear how its argument squares with § 1971's text.  In Texas, an individual is qualified to vote only if she is registered and to register via fax she must comply with the wet signature rule.    Tex. Elec. Code §§ 11.002(a)(6), 13.002(a).  Thus, to be qualified to vote she must mail her application to the county registrar with a wet signature.  Moreover, the text of Tex. Elec. Code §§ 13.002(a) and 13.002(b) suggest that the general requirement that an application be "signed by the applicant" is no more or less material under § 1971 than the requirement that an application submitted by fax be "in accordance with" the wet signature requirement.  In short, the two requirements fall or stand together under § 1971.  Vote.org cannot logically maintain that the one is valid and the other not.

Because the defendants can show that Vote.org's § 1971 claim is unlikely to succeed, they have also shown a strong likelihood of success on this front.

### iii.

Finally, the defendants contend that Vote.org is unlikely to succeed on its constitutional claim under the First and Fourteenth Amendments. "Where a state election rule directly restricts or otherwise burdens an individual's First [or Fourteenth] Amendment rights, courts apply a balancing test derived from two Supreme Court decisions," *Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564 (1983), and *Burdick v. Takushi*,

504 U.S. 428, 112 S. Ct. 2059 (1992). *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013). In applying the *Anderson-Burdick* framework, this court "must weigh the character and magnitude of the asserted injury" to voting rights under the First and Fourteenth Amendments "against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* at 387-88 (quoting *Burdick*, 504 U.S. at 434, 112 S. Ct. at 2063, and *Anderson*, 460 U.S. at 789, 103 S. Ct. at 1570). "State rules that impose a severe burden" on voting rights "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* at 388 (quoting *Burdick*, 504 U.S. at 434, 112 S. Ct. at 2063). By contrast, State rules that impose lesser burdens "trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Id.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S. Ct. 1364, 1370 (1997)).

The defendants assert that the wet signature rule imposes at most a *de minimis* burden on the right to vote. Drawing an analogy to *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136 (5th Cir. 2020) ("*LULAC*"), the defendants posit that the wet signature requirement is part of the Texas Legislature's expansion of the means for voter registration. *Id.* at 144 (concluding that "one strains to see how [the voting provision at issue] burdens voting at all" because it is "part of the Governor's *expansion* of opportunities to case" a ballot). And any burden on the right to vote, the defendants contend, is mitigated by the availability of numerous other ways to register. Furthermore, the defendants stress that the wet signature requirement advances Texas's interests in (1) guaranteeing that the applicant attests to meeting the State's voting qualifications and (2) helping to deter and detect voter fraud.

As it did before the district court, Vote.org contends that the defendants err in characterizing the wet signature rule as part of an expansion

of voting rights.  *LULAC* is distinguishable, Vote.org contends, because it addressed a challenge to voting provisions adopted in quick succession. Here, by contrast, Texas first offered registration via fax in 2013 but then restricted access to that method of registration by adopting the wet signature rule in 2021.  As to the State's interests, Vote.org asserts that the defendants fail to offer a coherent explanation that justifies the burden the wet signature rule places on voters.  Texas's asserted interest in guaranteeing that an applicant attests to meeting the qualifications to vote is belied by the fact that Texas allows residents to use imaged signatures in many other similarly important contexts.  And that Texas might compare a voter registration form against later registration or ballots if their authenticity is in question hardly shows why a *wet* signature is required.  Critically, the district court found that "[a]t no time is an original, wet signature used to conduct a voter-fraud investigation."

For at least two reasons the defendants are likely to succeed on this balancing test.  First, the defendants are almost certainly correct that the wet signature rule imposes at most a very slight burden on the right to vote. Indeed, "one strains to see how it burdens voting at all."  *LULAC*, 978 F.3d at 144.  The wet signature requirement does not burden the right to vote in toto, it only affects the small subset of voter registration applicants that elect to register via fax.  And even for those applicants, the burden is small. Second, the State's asserted interests are surely adequate to justify the slight burden imposed by the wet signature rule.  "Any corruption in voter registration affects a state's paramount obligation to ensure the integrity of the voting process and threatens the public's right to democratic government." *Voting for Am., Inc.*, 732 F.3d at 394. Physically signing a voter registration form and thereby attesting, under penalty of perjury, that one satisfies the requirements to vote carries a solemn weight that merely submitting an electronic image of one's signature via web application does

not. Thus, it is almost unquestionable that the wet signature requirement helps deter voter registration fraud. Moreover, actual evidence of voter registration fraud "has never been required to justify a state's prophylactic measures to decrease occasions for vote fraud or to increase the uniformity and predictability of election administration." *LULAC*, 978 F.3d at 147. Accordingly, the defendants have shown a likelihood of success on this issue.

## B.

Having concluded that the defendants have shown a strong likelihood of success on the merits, we address the remaining *Nken* factors; namely, "whether the applicant will be irreparably injured absent a stay"; "whether issuance of the say will substantially injure the other parties interested in the proceeding"; and "where the public interest lies." *Nken*, 556 U.S. at 426, 129 S. Ct. at 1756.

The defendants easily satisfy their burden to show that they will be irreparably injured absent a stay. When a "State is seeking to stay a preliminary injunction, it's generally enough to say" that "'[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (quoting *Maryland v. King*, 567 U.S. 1301, 1301, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers)). So it is here. *See LULAC*, 978 F.3d at 149; *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 411 (5th Cir. 2020). Vote.org's contrary arguments are unavailing.

The remaining two factors also weigh in the defendants' favor. Issuing a stay pending appeal will not substantially injure either Vote.org or other interested parties (i.e. voters in the four counties where the district court's injunction applies) because Vote.org cannot register to vote and individuals seeking to register to vote can simply comply with the wet

No. 22-50536

signature requirement or else register in another way. Moreover, a stay simply maintains the status quo since at least 2018, when the Texas Secretary of State clarified that wet signatures are required for voter registration applications submitted via fax. Finally, where "the State is the appealing party," as it is here, "its interest and harm merge with the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). A temporary stay will, at a minimum, minimize confusion among voters and county registrars by making voter registration law uniform throughout the state in the crucial months leading up to the voter registration deadline. That result is plainly within the public's interest.

## III.

The defendants' emergency motion for stay pending appeal is therefore GRANTED.